## COMMONWEALTH *vs.* JOHN JENNINGS.

When a party introduces evidence of a quarrel between himself and a witness, for the purpose of affecting the credit of the latter, it is within the discretion of the presiding judge how far to allow the other party to show the nature and particulars of the quarrel.

On an issue whether a person was the keeper of a tenement which was used for the illegal sale of intoxicating liquors, evidence is admissible that to kegs found in the tenement were attached tags bearing his initials and the name of an express company; that barrels of liquor bearing his name or initials arrived at a freight-house, and were, in part or in whole, taken off upon vehicles running to the tenement; and that he requested a witness to say nothing about his having liquor come there.

The mere fact that a witness at a trial was allowed to give his opinion of the meaning of initials marked on a barrel affords no ground for sustaining a bill of exceptions which does not show that such testimony was incompetent or was material.

On an indictment for the illegal keeping of a tenement for the sale of intoxicating liquors, the judge instructed the jury that if the defendant was interested in the profits of the business, or was a partner, he could be held; that if another person was the sole owner in fact, the defendant must be acquitted; and that if the jury entertained a reasonable doubt as to who was the proprietor, or that the defendant was such, they must acquit. *Held*, that the defendant had no ground of exception.

INDICTMENT found at December term 1870 of the superior court, for keeping and maintaining a tenement in Springfield for the illegal sale and keeping of intoxicating liquors between June 1, 1870, and the day of the finding of the indictment.

At the trial before *Brigham*, C. J., the defendant admitted that the tenement was so kept and maintained, but contended that before June 1, 1870, he sold out to Morris O. Connor all interest in the business there carried on, and that he had no interest in or control of the premises and business since that time.

Sebeas C. Couch and Hannibal H. Billings, both deputies of the constable of the Commonwealth, were witnesses for the Commonwealth. The defendant, on cross-examination, asked Couch, who testified after Billings, if Billings had not had trouble and angry conversation with the defendant; and Couch replied that such was the fact. Upon reëxamination, the district attorney asked what the difficulty was between the defendant and Billings, the defendant objected to the question, but the judge ruled that it was competent to ascertain the extent of the ill will which the trouble would occasion ; and Couch thereupon testified "that he and Billings made a seizure at the tenement in question in March 1870 ; that the defendant came to their office the next day and said that if he had been there when they made the seizure they would have made it over his dead body; and that other hard talk passed between the parties."

Couch further testified without objection that he made a seizure at the tenement in October 1870, when the defendant was not present; and that some kegs stood near the door, with bright and fresh express tags attached to them. The district attorney asked how the kegs came there, and the witness said he did not know, except what the tags said. The district attorney asked what was on the tags, and the defendant objected. The judge overruled the objection, and admitted the evidence to show that the tenement was kept and used by the defendant at the time alleged in the indictment; and the witness answered that the tags were marked " J. J.," and also with the name of the express from Ware. No further evidence was given as to these tags ; and all the testimony in relation to them was excepted to by the defendant.

Elisha C. Pettis, a witness called by the Commonwealth, was allowed, against the objection of the defendant, to testify as follows: " In the summer of 1870, since June 1, the defendant said he did not wish me to say anything about his having liquor coming there. In one or two instances, iron-bound barrels and half barrels of liquors have come to the freight-house of the Boston & Albany Railroad at Springfield, marked in the defendant's own name. The team that runs to the tenement drew them away. Other barrels have come to the freight-house, marked " J. T. & Co." and " J. J." underneath. I suppose " J. T. & Co." means John Tracy & Company, of Albany."

The judge instructed the jury, among other things not now material, that " if the defendant was interested in the profits of the business, or was a partner, he could be held under this indictment; that if Connor was the sole owner in fact, the defendant must be acquitted; and that if the jury entertained a reasonable doubt as to who was the proprietor, or that the defendant was such, they must acquit." The defendant was convicted, and alleged exceptions.

*G. M. Stearns,* (*M. P. Knowlton* with him,) for the defendant. 1. Although personal controversy may be shown, particulars cannot be inquired into; to do so would lead to the trial of numerous collateral issues.

2. The writing on the tags should not have been admitted; it was admitting evidence of the doings of the Ware Express Company, which were *res inter alios.*

3. The testimony of Pettis was inadmissible. The fact that barrels of liquor came to the freight-house, marked with the defendant's name, and were drawn to the tenement in question, had no tendency to prove that the defendant kept the tenement. His knowledge was not shown. The evidence as to the other barrels was even more objectionable. The opinion of the witness that " J. T. & Co." meant John Tracy & Company was not competent. The witness could not give his opinion that the barrels came from a noted liquor firm in Albany.

4. The judge instructed the jury that if " the defendant was interested in the profits of the business, or was a partner," he was

guilty ; but the defendant might be interested in the profits as a compensation for doing some lawful business for Connor, and yet not be a partner, nor a keeper of the tenement.

*C. Allen*, Attorney General, for the Commonwealth.

MORTON, J.  1.  The defendant offered evidence to show that there had been an angry controversy between him and Billings, one of the witnesses for the government.  The purpose was to affect the credit of Billings.  It was competent for the government to show what the nature of the controversy was, so that the jury might judge how far it would bias the witness and affect his credit.  The extent to which such inquiry shall be carried is within the discretion of the presiding judge.

2.  The testimony as to the tags was admissible.  It constituted a part of the description of the kegs found at the tenement in question, and in connection with the evidence of the defendant's continued presence there, and acts of control, had some tendency to show that he was still keeping the tenement.  It was for the jury to say whether the kegs were thus marked with his knowledge.

3.  The testimony of Pettis was admissible.  The facts that barrels of liquor, marked with the defendant's name or initials, arrived at the depot, and were, in part or in whole, taken off by teams running to this tenement, if known to the defendant, were competent to show that he still kept the place ; and the request of the defendant to the witness not to say anything about his having liquors coming there, and the other evidence in the case, would authorize the jury to find that he knew that the barrels were thus marked.  The statement of the witness that he supposed the mark " J. T. & Co." meant John Tracy & Company of Albany, furnishes no ground for a new trial.  If the witness knew, by the admission of the defendant or otherwise, that the initials were those of John Tracy & Company, the evidence was competent.  It does not appear that he had not such knowledge. Nor does it appear that John Tracy & Company were, as is now claimed, " a noted liquor firm in Albany."  The bill of exceptions does not show that the testimony was incompetent, nor that it was material.

4. The instructions were sufficiently favorable to the defendant. The only part now objected to is the ruling that, if the defendant "was interested in the profits of the business, or was a partner, he could be held under this indictment." The argument of the defendant's counsel is, that this ruling authorized the jury to convict the defendant, if he was not a partner, but was to receive a part of the profits as compensation for doing any lawful business for Connor. But we think it is clear from the context, that the instruction meant that he must be interested in the profits as a proprietor of the tenement, and must have been so understood by the jury.                                              *Exceptions overruled.*