## COMMONWEALTH vs. NATHANIEL ALLEN.

Middlesex.    June 26. — Oct. 23, 1879.    MORTON & ENDICOTT, JJ., absent.
November 25. — December 3, 1879.

The first count of an indictment charged that the defendant, at a time and place named, "a certain building, to wit, an elevator building there situate, and then and there the property of one A., feloniously, wilfully and maliciously did set fire to, burn and consume." The second count charged that the defendant, at the same time and place, "a certain building there situate, to wit, a building then and there used for shops, mechanics' work-shops, and for an elevator, and then and there called the elevator building, and then and there the property of one A., feloniously, wilfully and maliciously did set fire to, burn and consume." *Held*, that the two counts did not appear to describe different offences; and that the St. of 1861, c. 181, did not apply.

At the trial of an indictment for burning a building in L., it appeared that the fire was discovered at about half-past six o'clock in the morning; and the defendant contended that he left L. at ten o'clock on the previous night, and returned there about eleven o'clock on the day of the fire. A witness for the government testified that he saw the defendant at the fire about eight o'clock; and, against the defendant's objection, was allowed to testify to a conversation which he then had with him. *Held*, that the defendant had no ground of exception to the admission of the conversation.

At the trial of an indictment for burning a building, two witnesses, who owned a part of the property burned, testified for the government that, prior to the fire, there had been difficulties between them and the defendant. For the purpose of showing bias on their part, the defendant offered in evidence their several affidavits given in a case of the assignee in bankruptcy of the defendant against the latter's wife and others, tending to show that the witnesses, when they gave the affidavits, sought to injure the defendant and his wife by voluntarily and maliciously aiding the plaintiff in that case. *Held*, that the defendant had no ground of exception to the exclusion of the affidavits.

In a criminal case, the judge may properly exclude a paper writing, offered by the defendant, containing certain words written by him during the trial, for the purpose of being compared with the same words alleged to have been written by him at another time, the genuineness of which is in controversy.

At the trial of an indictment for burning a building, a witness, who owned part of the property burned, testified for the government that, prior to the fire, he and the defendant had been connected in business; that difficulties had arisen between them; and that the defendant had told him that he would "be even with him," and would "make it hot for him." On cross-examination, it appeared that the witness had made a complaint in a criminal court against the defendant for a forgery; that the complaint had been dismissed for want of probable cause; and that the defendant had afterwards brought an action against the witness for a malicious prosecution, which action was still pending. For the purpose of showing bias and interest in the witness, and that the above words used by the defendant were not used as a menace of injury to the witness's property by burning, the defendant offered in evidence the original writ and declaration in his action for malicious prosecution, with the docket entries relating to it, and the record of the proceedings in the criminal court upon the complaint against him for forgery. *Held*, that it was in the discretion of the presiding judge to exclude the evidence offered.

INDICTMENT, in two counts. The first count charged that the defendant, on January 20, 1878, at Lowell, "a certain building, to wit, an elevator building there situate, and then and there the property of one Ann E. Ayer, feloniously, wilfully and maliciously did set fire to, burn and consume." The second count charged that the defendant, at the same time and place, "a certain building, there situate, to wit, a building then and there used for shops, mechanics' work-shops, and for an elevator and then and there called the elevator building, and then and there the property of one Ann E. Ayer, feloniously, wilfully and maliciously did set fire to, burn and consume."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment for the following reason: " Said indictment contains two counts describing different offences, and contains no averment that the different counts therein contained are different descriptions of the same act." *Allen*, J., overruled the motion.

The defendant was afterwards tried before *Bacon*, J., who allowed a bill of exceptions in substance as follows:

It appeared that the building in question was destroyed by fire on the day alleged in the indictment, the fire being discovered at about half-past six o'clock in the morning. The defendant contended that he left Lowell at ten o'clock on the previous night, proceeded to Groton in a carriage, put up at the Central House there about midnight, and returned to Lowell about eleven o'clock on the day of the fire.

Caleb Knight testified, for the government, that he saw the defendant at the fire about eight o'clock; and, against the defendant's objection, he was allowed to testify that he was at work removing cars loaded with potatoes from near the fire, when the defendant came up to him and inquired, " How many bushels of potatoes have you here? " and that the witness replied, " I don't know, and if I did, I wouldn't tell you." Before admitting this evidence, the judge inquired whether the defendant denied that he was there at the time, and he replied that he denied that he was there before eleven o'clock.

Enoch R. Blair testified for the government that he owned part of the personal property burned in the building; that he and the defendant had been connected in business from January

to June, 1877; that difficulties had arisen between them, and the defendant had told him that he would be even with him yet, and would pay him, and would make it hot for him. On cross-examination, it appeared that Blair had caused a complaint for forgery to be made against the defendant; and that the defendant had brought an action against Blair for malicious prosecution. For the purpose of showing bias and interest in Blair, and that the words thus used by the defendant were not used as a menace of injury to Blair's property by burning, the defendant offered in evidence the original writ and declaration in a civil action, together with the docket entries relating thereto, entered in the Superior Court at December term 1877, and still pending therein, in which the defendant seeks to recover damages of Blair for maliciously prosecuting him, Allen, for said alleged forgery; but the judge excluded this evidence. For the same purposes, the defendant offered in evidence a certified copy of said complaint, which Blair caused to be made against him in June 1877, in the Municipal Court of the city of Boston, for said alleged forgery, and a certified copy of the record of the proceedings thereon in that court, with an order dismissing the complaint, after a hearing on the merits, for want of probable cause to hold Allen to bail thereon; but the judge excluded this evidence.

William R. Hoar testified for the defendant that he was the keeper of the Central House in Groton; and that the defendant put up there after midnight preceding the fire, making in his presence at the time the following entry on the register of the hotel: "W. C. Johnson and wife, Fitchburg, Mass." The government contended that the defendant did not make that entry; or, if he made it, that he made it at another time; and standards were introduced, by the defendant, of his handwriting. For the purpose of showing that the defendant wrote said entry, he offered in evidence certain paper writings, written by him since this prosecution was begun, for the purpose of being used as evidence, containing the identical words of said entry and none other; but the judge excluded them.

William W. Morse and John G. Sherburne testified for the government that they severally owned a part of the personal property destroyed by the fire; that there had been difficulties

between them and the defendant in August or September, 1877; and that the defendant then said they would wish they had let him alone, that he would be even with them yet, and that he would "beat" them yet. For the purpose of showing that whatever hostile feeling the defendant then had towards the witnesses had passed away prior to the fire, and that, in December 1877, and afterwards up to the time of the fire, the defendant dealt with them on friendly terms, and also for the purpose of showing bias on their part, the defendant offered in evidence their several affidavits, given by them respectively on February 24, 1879, and filed in a case of the assignee in bankruptcy of the defendant in equity, against the latter's wife and others, tending to show that Morse and the defendant had bought and sold divers parcels of real estate and mining property to each other in December 1877, on friendly terms, and also tending to show that the witnesses, when they gave the affidavits, sought to injure the defendant and his wife by voluntarily and maliciously aiding the plaintiff in said case. Upon the affidavits being offered in evidence, the judge asked the defendant to point out any part of either of them which would be competent evidence upon the issues in this case, and the defendant answered that he could not do so. The judge thereupon excluded the affidavits. The jury returned a verdict of guilty; and the defendant alleged exceptions.

*C. Cowley*, (*D. O. Allen* with him,) for the defendant.

*G. Marston*, Attorney General, *& F. H. Gillett*, Assistant Attorney General, for the Commonwealth.

AMES, J. The motion to quash the indictment was properly overruled. The two counts do not appear to be for different offences, and, for that reason, the St. of 1861, *c.* 181, requiring an averment that the different counts are different descriptions of the same act, does not apply. That statute was not intended for the case of merely slight verbal changes in the description of property stolen or injured, provided the substantial identity is not affected; but to prevent the objection of misjoinder where the description might at common law be open to that objection. *Commonwealth* v. *O'Connell*, 12 Allen, 451.

The evidence as to the conversation between the defendant and the witness Knight was properly admitted. It was compe-

tent for the purpose of showing that the defendant was present at the scene of the fire at a much earlier hour than he admitted in his defence. The particulars of the conversation, though unimportant in themselves, had a tendency to identify the occasion on which, and the person with whom, it occurred. Its general nature and duration, and its connection with the employment in which the witness was engaged, were calculated to make an impression on his mind, and to strengthen his recollection of the time and place.

Neither do we see that any wrong was done to the defendant in the exclusion of the affidavits of the witnesses Morse and Sherburne. They had already admitted that before the fire they had had difficulties with him, and he was entitled, without using the affidavits, to whatever deduction should be made from their testimony on that account.

In the recent case of *King* v. *Donahue*, 110 Mass. 155, it was decided in substance that a party to an action is not entitled to write his signature in the presence of the jury, or to use his signature written for the occasion and *post litem motam*, for the purpose of comparison with a signature, the genuineness of which as his own is in controversy. The defendant's argument invites us to reconsider that decision, and he cites and relies upon the cases of *Osbourne* v. *Hosier*, 6 Mod. 167; *Williams'* case, 1 Lewin, 137; and *Regina* v. *Taylor*, 6 Cox C. C. 58, which it is suggested were overlooked when *King* v. *Donahue* was decided. We find nothing, however, in those cases that requires us to overrule or reconsider that decision. The cases cited, and which are presented as inconsistent with *King* v. *Donahue*, go no farther, as we find, on full examination, than to show that under some circumstances presiding judges in their discretion have ordered or allowed signatures to be written in the presence of the jury, and considered by them; not that a judge may not refuse to permit such a signature to be written when the circumstances are such that it does not appear to him to furnish a fair standard of comparison. We see no reason to hold that the presiding judge was bound by law to admit the paper writings offered by the defendant for the purpose of comparison.

Upon the remaining exception taken by the defendant

*Further argument is ordered.*

The case was then submitted to all the judges, on additional briefs, by the same counsel.

AMES, J.   Upon the reargument of the only exception not already disposed of, it is the opinion of the majority of the court that the bill of exceptions, upon a fair construction, shows it to have been admitted that the witness Blair had made a complaint in a criminal court against the defendant, for an alleged forgery; that the complaint had been dismissed for want of probable cause; and that the defendant had afterwards brought an action against him to recover damages for a malicious prosecution, which action is still pending.   So far as the question as to the bias and prejudice of the witness was concerned, the defendant had the full benefit of these facts.   They were quite enough to show that there had been hostile relations of a serious character between them.   But it was a question, not as to the particulars and merits of any controversy between them, but as to the state of mind of the witness, and the credit to which he was entitled.   It was entirely within the discretion of the presiding judge to decide to what extent the inquiry as to the particulars of the quarrel should be carried.   *Commonwealth* v. *Jennings*, 107 Mass. 488.   *Morrissey* v. *Ingham*, 111 Mass. 63.

Upon the question as to the meaning of the threat said to have been made "to be even with" the witness, and to "make it hot for him," it is true that it does not necessarily express an intent to injure his property by burning.   The defendant was entitled to offer any explanatory evidence tending to show that such was not his meaning.   The original writ and declaration in his suit for malicious prosecution with the docket entries in relation to it, and the record of the proceedings in the Municipal Court of Boston, upon the complaint against him for forgery, cannot be said to have been incompetent for that purpose.   But the witness had already, on cross-examination, admitted that he had caused a complaint to be made against the defendant on a charge of forgery, and that the defendant had brought an action against him for malicious prosecution.   The record of the Municipal Court could only show that the complaint had not been sustained, a fact which was fully admitted.   The writ, declaration and docket record would only show that the defendant was seeking redress in a civil action for the wrong done

him, which was also admitted. The particulars of what trans-
pired at the hearing in the Municipal Court could have little if
any bearing upon the trial of this indictment. The record in
the civil action could only show that such an action, for such
an alleged wrong, was pending in the proper tribunal. It is
true that an admission extorted from a witness upon cross-
examination does not preclude the party obtaining it from
showing the same fact in more detail by other evidence. But
there was nothing in the evidence offered by the defendant
that added anything to the proof of the bias and prejudice of
the witness, or that threw, or could throw, any additional light
upon the proper interpretation of the alleged threat made use of
by the defendant. The majority of the court are of opinion that
the presiding judge, in the exercise of his discretion, had a right
to refuse to receive the details of what occurred at the trial
upon the complaint, and also the details of the proceedings and
pleadings in the action for damages.      *Exceptions overruled.*