## D. W. McGLASSON v. THE STATE.

### No. 1163. Decided May 12th, 1897.

**1. Uttering Forged Instrument—Evidence—Contemporaneous Crime.**

On a trial for uttering and passing as true a forged instrument, evidence of other contemporaneous crimes of the same character, is admissible as tending to develop the intent with which the accused acted with respect to the matter charged against him.

**2. Same—Systematic Crime—Same Method Used but Instruments are not Contemporaneous.**

Where it is proposed to show systematic crime, subsequent, as well as prior offenses, which go to establish identity or intent, are admissible in evidence, and it is not necessary, in order to make them admissible, that they should be part of the same offense. Distinct offenses of the same character may be proved, though not contemporaneous in point of time, if they were similar in the plan and method adopted, in forging and uttering, to that charged against defendant and shown by the evidence.

**3. Comparison of Handwriting—Permitting Prosecutor to Write His Name for Such Purpose.**

On a trial for uttering a forged instrument, where the prosecutor, as a witness, has denied his execution of the instrument which was shown to him; and, over objection of defendant, was then permitted to write his name upon a piece of paper, and the same was then exhibited as evidence to the jury for comparison of handwriting. Held: Error. The rule authorizing the signatures of witnesses for comparison only, goes to the extent of admitting such as are proved or conceded to be genuine, and such as have been executed before there was any motive to fabricate and disguise the handwriting. And this rule is not affected by the fact that the witness could only write his name, unless it be shown that he could write it only in one form and without the change of a letter.

APPEAL from the District Court of Bell. Tried below before Hon. JOHN M. FURMAN.

Appeal from a conviction for passing a forged instrument; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*J. E. Yantis*, for appellant.—The court erred in allowing the witnesses, J. M. Knowles and W. J. Curtis to write their names on paper after being shown the notes the execution of which they denied, and erred in allowing their names, as thus written, to go to the jury for comparison by them. This afforded the witnesses an opportunity to disguise their writing. They were shown their signatures to the notes which they denied, and then after inspecting said signatures they were permitted to write their names for the purpose of comparison by the jury. Besides the jury had no right to make such comparison. The Code of Criminal Procedure provides that they make comparisons of handwriting, but they can not do so except in accordance with the rules

of evidence relating to experts on handwriting. · Now, that rule is this: Comparison of writing by a witness can only be made with such writings as are legally in evidence for some other purpose than that of being compared. This doctrine is well settled and has long been the recognized law, both in civil and criminal cases. The defendant properly excepted to this error of the court. Chester v. State, 23 Tex. Crim. App., 577; Griffin v. State (Ala.), 8 So. Rep., 670; People v. Parker, 67 Mich., 222; Miles v. Loomis, 75 N. Y., 291; Randolph v. Loughlin, 48 N. Y., 456; King v. Donohoe, 110 Mass., 155; First National Bank v. Robert, 41 Mich., 710; Spence v. Lindo, 19 Ala., 179; State v. Chinton, 67 Mo., 380; Rose v. First National Bank of Springfield, 91 Mo., 399; State v. Miller, 47 Wis., 530; Abbott's Trial Brief, §§ 413, 434.

*Mann Trice,* Assistant Attorney-General, for the State.—I concede that the use of handwriting for the purpose of comparison at the trial is by the weight of authority confined to that written before the trial. Many authorities hold that a person cannot offer a specimen of handwriting written during the trial. This, however, is not the universal rule. Originally, proof of signature could not be made by comparison of handwriting. This rule seems to have been settled in England until finally by statute it was enacted, "that comparison of a disputed handwriting proved to the satisfaction of the judge to be genuine is permitted." Stephen on Ev., Sec. 52; 17 and 18 Vict. Ch., 125.

Alabama, Arkansas, California, Colorado, Illinois, Kentucky, Maryland, Michigan, Missouri, New York, North Carolina, Rhode Island, Tennessee, Virginia, West Virginia, seem to have adopted the old English rule, and reject the evidence unless permitted by statute.

Connecticut, Georgia, Indiana, Iowa, Kansas, Maine, New Hampshire, Nebraska, Ohio, South Carolina, Pennsylvania, Vermont, Utah, and it seems Texas, adheres to the new or modern English rule, and per-mits proof by comparison in civil cases. Cameron v. Sweet, 28 S. W. Rep., 718. In England there is a statute by which a person whose handwriting is in dispute may be called upon by the court to write his name in the presence of the jury. Rex v. Taylor, 6 Cox Crim. C., 58; Whar., Crim. Ev., 550.

, In this country there is high authority for the rule that in the absence of statute, the court may in the exercise of sound discretion, require a party to write his signature in the presence of the jury as a basis of comparison. Smith v. King, 62 Conn.; Williams v. Richers, 77 Wis., 569.

By Art. 754, Code Crim. Proc., it seems that the modern English rule, that is, the rule growing out of the statute of 17 and 18 Vict., supra, is adopted. By this article it is competent in every case to give evidence of handwriting by comparison, subject to the proviso, that comparison alone shall not be sufficient to establish the handwriting of a witness who denies his signature under oath.

The witness, Knowles, denied his signature to the note in this case,

both the genuine and forged notes were in evidence, appellant claiming that he signed the note in this case, and witness disputing this. It was therefore competent for either disputant to corroborate his statement by any legitimate evidence.

Now, there is no statutory inhibition against the comparison suggested in this case. The plain import of the above-quoted article of the Code of Criminal Procedure indicates that other avenues of proof may be resorted to. It is in the proper discretion of the court to allow parties reasonable latitude in making tests in the presence of the jury. Thus, after evidence as to identity and similarity of conditions, a machine may be operated in the presence of the jury. Nat. Cash Reg. Co. v. Blumenthal, 85 Mich., 464. May allow a person to wear a suit of clothes before the jury to determine whether a fit. Brown v. Foster, 113 Mass., 136. Expert may illustrate his testimony concerning handwriting by use of a blackboard in the presence of the jury. McKay v. Lasher, 121 N. Y., 477; State v. Henderson, 29 W. Va., 147.

In short, a court may require or permit a witness to do most any physical act in the presence of the jury for the purpose of identity or as showing health, condition or ability to read or write. Ort v. Fowler, 31 Kan., 478; Huff v. Nivens, 11 Neb., 363; State v. Henderson, 29 W. Va., 147.

The reason that a witness called on to write may attempt to disguise his hand is not deemed sufficient to exclude an inquiry that might develop the truth as to any disputed fact, and render clear what was before doubtful. If this reason is to be held sufficient, then upon the same principle, you might as well exclude the sworn testimony of any witness, for there is no absolute assurance that false testimony may not be given under oath. If disguise or simulation is attempted, detection on cross-examination is almost inevitable. Physical tests could be demonstrated false or correct oftener than oral testimony could be so demonstrated.

HENDERSON, JUDGE.—Appellant was convicted of passing as true a certain forged instrument, in writing, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal. The State's case was for passing as true an alleged forged vendor's lien note executed by one Knowles in 1893. It appears that said note was a part of a transaction involved in the sale of a tract of forty acres of land. The land was in the name of one Russell. It appears, however, that he held said tract of land in trust for appellant, McGlasson, and that the notes were made payable by Knowles to Russell, and subsequently transferred to appellant. There were three notes, each for the sum of $266.70, executed on the 17th day of November, 1893, and payable in one, two and three years thereafter. The forgery was alleged to be of the name of J. M. Knowles, the signer of said notes, and the vendee of said tract of land, and the passing was to one Roseborough. The State's evidence further tended to show that besides said genuine

notes, which were executed by J. M. Knowles, appellant forged and uttered other notes similar in terms to said genuine notes; the charge being for uttering one of the said last-mentioned forged notes. The evidence further showed that the genuine notes, except one, about which there was no testimony, were negotiated in 1894 to Silliman & Co., at Fort Worth, and the alleged forged notes were pledged as security to D. D. Roseborough in 1894, and the one appellant is charged to have uttered was bought by said Roseborough in 1895. The defense set up by appellant was to the effect that in executing said notes by Knowles there was a mistake, and in fact but two notes were executed, and that he subsequently called on Knowles, in 1894, and represented the mistake to him, and he agreed to, and did execute three notes in lieu of the alleged original notes; and he also stated to said Knowles at the time that said original notes were lost or mislaid, and he indemnified said Knowles against said original notes. Said original notes were shown to have been negotiated to Silliman & Co., at Fort Worth, in 1894, by the defendant. Defendant, however, explains that he had no knowledge of said negotiation, and claimed not to have negotiated them. On the trial the State introduced a number of transactions similar to that involved in the prosecution in this case; that is, some of them genuine sales of land, with genuine notes, and then the forging of notes similar to said genuine notes, and the negotiation of the same. These are the notes known as the Holcomb, Stringer, and Wallace notes, negotiated to E. Rotan; and the Clark notes, also negotiated to Rotan, executed November 5, 1895, and negotiated in February, 1896; and the Curtis notes, executed on the 24th of July, 1893, and negotiated to Mrs. Sewell in 1894. The State introduced testimony showing that these notes were all based on land transactions, and that duplicates of the genuine original notes were forged, and both the originals and the forged duplicates were negotiated by the appellant, and that most of these transactions involved several notes—said notes being made payable in consecutive years. With the exception of the Curtis notes, which were executed in 1893, shortly before the execution of the notes in this case, the remainder of said notes were executed and negotiated subsequently, extending from 1894 to 1895. Appellant objected to the introduction of this testimony—that is, testimony regarding other transactions—on the ground that they were distinct offenses, not connected with the offense charged, and no part of the same, and not admissible. We have examined this question in the light of the authorities. It has been repeatedly held by this court that evidence of contemporaneous crimes was admissible when such evidence tended to establish identity in developing the res gestæ, or in making out the guilt of the accused by circumstances connected with the transaction, or to explain the intent with which the accused acted with respect to the matter charged against him. See, House v. State, 16 Tex. Crim. App., 25; Kelley v. State, 18 Tex. Crim. App., 262; Holmes v. State, 20 Tex. Crim. App., 509; Alexander v. State, 21 Tex. Crim. App., 407; Oliver v. State, 33 Tex. Crim. Rep.,

541; Whart., Crim. Ev., §§ 31-48, et seq. And, when the object of such collateral matter is to show system, subsequent as well as prior offenses, tending to establish identity or intent, can be put in evidence. See, Hennessy v. State, 23 Tex. Crim. App., 340; Whart., Crim. Ev., §§ 37, 38. But it is insisted that, to be part of a system, it must be connected with and part of the same offense. This however, is not correct. In Mason v. State, 31 Tex. Crim. Rep., 306, which was a case of forgery, other distinct forgeries were admitted in evidence. See, Heard v. State, 9 Tex. Crim. App., 1. To the same effect, see, also, Com. v. Price, 10 Gray, 472, and Rex v. Smith, 4 Car. & P., 411. And the same principle is applicable to other offenses. In Reg. v. Bleasdale, 2 Car. & K., 765, which was a case of theft of coal, it appearing that the coal was stolen from a shaft, and there were a number of takings, the court say, "But, in order to show that when the prisoner took the coal of Mr. Gunning in number ten drift, he was out of his boundary, I permit it to be proved that he has gone out of his boundary in many other instances, and into the property of other persons, taking in all 15,000 yards of coal." In that case other distinct takings were allowed to be proved in order to show that the prisoner's defense, to-wit: that he did not know he was out of his own boundary, was but a mere pretext. Brown v. State, 26 Ohio St., 176, was a case where a certain horse doctor had at different times and places injured other horses for the purpose of obtaining fees for curing the same. He was indicted for injuring one horse, and proof of the injuries to the others was held admissible. See, also, Kramer v. Com., 87 Pa. St., 299, and Thayer v. Thayer, 101 Mass., 111. The forgery and the utterance thereof admitted in evidence were not part of the same transaction as the forgery charged, and were not contemporaneous in point of time. One of the instances preceded that charged in the indictment, and the others followed, covering a space of more than a year; but they were similar in the method adopted of forging and of uttering to that charged against the defendant and shown by the evidence. Appellant, however, denied the forgery, and introduced evidence tending to show that the paper was not in fact a forgery, but was executed by the prosecutor, Knowles, himself. It is true, his testimony shows him guilty of the same degree of moral turpitude, according to his own defense, as if he had forged the paper, and uttered it knowing it to be forged; but the defense set up by him as to passing a forged instrument, if true, would defeat the prosecution in this case. In order to strengthen the State's case, we believe that the testimony was competent, not because it was contemporaneous, not because it was a part of the same transaction, but because it showed or tended to show that appellant had adopted the same plan to utter forged instruments in other cases as was insisted upon by the State he had pursued in this case. Steph., Ev. p. 19, lays down the rule thus: "Facts necessary to be known to explain or introduce a fact in issue, or relevant, or deemed to be relevant, to the issue, or which support or rebut an inference suggested by any such fact, or which establish the identity

of any thing or person whose identity is in issue, or is deemed to be relevant to the issue, or which fixes the time or place at which any such fact happened, or which show that any document produced is genuine or otherwise, or which show the relation of the parties by whom any such fact was transacted, or which afforded an opportunity for its occurrence or transaction, or which are necessary to be known in order to show the relevancy of other facts, are deemed to be relevant in so far as they are necessary for those purposes, respectively." And see, authorities cited thereto. Under this rule, and the authorities above quoted, the testimony objected to was properly received by the court. During the trial of the case it was an issue whether or not the name, "J. M. Knowles," signed to the alleged instrument appellant was charged with uttering, was the true and genuine signature of the said J. M. Knowles. "The said J. M. Knowles was introduced as a witness on this issue by the State, and he was permitted, over the objections of the defendant, after he denied his execution of the note which defendant is charged to have uttered in this case, after said note had been shown to him, and after the signature to said note had been shown to him, to then and there write his name on a piece of paper; and this piece of paper, with the name as thus written, was permitted to be introduced in evidence, and was shown to the jury by State's counsel, for the purpose of comparison of handwriting. To all of which the defendant then and there objected, on the ground that it was contrary to the rules of evidence to permit said witness to thus write his name after he had been shown the signature to the note which is charged to have been forged, and for the reason that it afforded said witness an opportunity to disguise his handwriting, and to write his name different from the way he wrote it to the said note, if he had done so; and for said reasons defendant objected to said signature as then and there written during the trial, to go to the jury as evidence. But the court overruled all of said objections, and permitted said witness to so write his name, and permitted said name, as thus written, to go to the jury as evidence." In this State it is competent to prove handwriting by comparison, and the comparison need not be of other signatures of the party, introduced in the case for other purposes. The rule is different in many of the other States, but it seems to be controlled in this State by statute. See, Art. 794, Code Crim. Proc., which is as follows: "It is competent in every case to give evidence of handwriting by comparison made by experts or by the jury, but proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath." See, Phillips v. State, 6 Tex. Crim. App., 364; Walker v. State, 14 Tex. Crim. App., 609; Heacock v. State, 13 Tex. Crim. App., 97; Rogers v. State, 11 Tex. Crim. App., 608; Heard v. State, 9 Tex. Crim. App., 1. The question presented in the above bill of exceptions is whether it is permissible to allow a witness—a private prosecutor, in a case of forgery, where his signature is alleged to be forged, and he denies such signature, to make his signa-

ture before the jury for the purpose of being used as evidence in the case bearing on the issue as to whether or not the signature to the instrument alleged to be forged is his genuine signature.   We believe it is the general rule, supported by all the authorities, and gainsaid by no well-considered case which we have been able to find, that such testimony is not admissible; the principle upon which the exclusion of this character of evidence is founded being its liability to fabrication, the witness, at the time he makes said signature for the purpose of comparison, having a motive to fabricate, and having the means furnished him at the time to aid him in such fabrication.   The question and the test to be applied in all such cases is, was the witness' knowledge acquired under such circumstances as would show that the party had a motive for disguising his handwriting?   If so, the testimony should be excluded, else a party would be permitted to manufacture testimony for himself.   See, Lawson, Exp. Ev., pp. 307-314; 1 Thomp. Trials, § 1135, and authorities there cited; King v. Donahue, 110 Mass., 155; Bronner v. Loomis, 14 Hun., 341; Com. v. Allen, 128 Mass., 46; Reid v. State, 20 Ga., 684.   The cases that appear to antagonize this rule either did not have the question in them, or the matter was not discussed upon principle.   See, Smith v. King, 62 Conn., 515, 26 Atl. Rep., 1059; Williams v. Riches, 77 Wis., 569, 46 N. W. Rep., 817.   In this case the witness was shown his purported signature to the forged instrument, and was then asked to write his name, that the jury might compare the same, in order to determine whether the alleged forged signature was his signature or not.   Of course, it was to the interest of the prosecuting witness to write his signature differently from the copy before him, and it is not the intention of the law to thus present temptations to human infirmity.   It is insisted, however, that the witness could only write his own name, and that consequently he was incapable of changing the form of his signature.   If the evidence established the fact that he could not write his name except in one form—that is, without a change in the formation of any letter—the position would be sound; but we have no such evidence in this case.   The inducement to fabricate is too great, under such conditions, and in such cases the courts do not authorize such testimony.   This court, in authorizing evidence of such signatures of witnesses for comparison, only goes to the extent of admitting such signatures as are proved or conceded to be genuine, and that were executed before there was any motive to fabricate.   We accordingly hold that the admission of this testimony was improper.   It was upon a material issue, and was calculated to prove hurtful to the appellant.   We deem it unnecessary to discuss other assignments of error presented.   For the error of the court in admitting the signature of the appellant made before the jury during the trial of the case for the purpose of comparison by them, the judgment of the lower court is reversed and the cause remanded.

*Reversed and Remanded.*