GENE HINSON v. THE STATE.

No. 4092.    Decided March 11, 1908.

**1.—Forgery—Evidence—Accomplice—Declarations of Co-conspirators.**

Where upon trial of an accomplice for passing a forged instrument, the State proved the passing of the instrument, and then placed defendant's accomplice on the witness stand and proved a conversation between the witness and defendant wherein defendant advised the witness to forge one of the notes in question, etc., there was no error.

**2.—Same—Evidence—Collateral Crime—Acts of Co-conspirators.**

Where upon trial of an accomplice to passing a forged instrument, the State after proving that defendant's accomplice passed the alleged forged note, placed upon the stand said accomplice and proved by him the intimacy and constant association before and after the commission of the offense, and that they had shared the fruits of the forgery and acted together therein, there was nothing in the objection that this was proving collateral and independent crime, and the evidence was admissible. Following Hinson v. State, 51 Texas Crim. Rep., 102, and other cases.

**3.—Same—Charge of Court—Accomplice Testimony—Weight of Evidence.**

See opinion of court for charge of court upon accomplice testimony which was proper and not on the weight of evidence.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Ware.

Appeal from a conviction of passing a forged instrument; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Greenwood & Basham,* for appellant.—On question of other offenses and independent crime: Smith v. State, 52 Texas Crim. Rep., 80; 19 Texas Ct. Rep., 973; Long v. State, 39 Texas Crim. Rep., 537; McAnnuly v. State, 73 S. W. Rep., 404; Hill v. State, 44 Texas Crim. Rep., 603; Walker v. State, 44 Texas Crim. Rep., 546; 72 S. W. Rep., 401; Barnett v. State, 44 Texas Crim. Rep., 592; 73 S. W. Rep., 399; Lee v. State, 45 Texas Crim. Rep., 51; 73 S. W. Rep., 407. On question of court's charge on accomplice testimony: Bell v. State, 39 Texas Crim. Rep., 677; 47 S. W. Rep., 111; Oates v. State, 51 Texas Crim. Rep., 449; 19 Texas Ct. Rep., 285; Crenshaw v. State, 12 Texas Ct. Rep., 758; Jones v. State, 7 Texas Ct. Rep., 13; Garlas v. State, 48 Texas Crim. Rep., 449; 13 Texas Ct. Rep., 690; Barton v. State, 49 Texas Crim. Rep., 121; 14 Texas Ct. Rep., 855; Hart v. State, 47 Texas Crim. Rep., 156; 11 Texas Ct. Rep., 190; McKinney v. State, 48 Texas Crim. Rep., 402; 13 Texas Ct. Rep., 638.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted as an accomplice to passing a forged instrument, and his punishment assessed at three years confinement in the penitentiary.

Bill of exceptions No. 1 shows that appellant was charged by indictment with having advised and encouraged one J. W. Bullard on the 29th day of June, 1906, to pass a certain note on R. P. Edrington for $126. The State placed said Edrington on the witness stand, and proved that Bullard passed the note described in the indictment for which he paid him the money. Thereupon the State placed said Bullard on the stand and proved by him that in 1906, he lived and worked on a farm near Peoria, and that appellant lived on a farm near him, and was working there; that about the 1st of June, 1906, appellant proposed to him that they raise some money and have a good time; that for the witness to have his wife leave on a visit, which witness said she was intending to do anyhow; that while she was gone they would get the money and have a good time. Witness testified that appellant in said conversation proposed that they would raise the money by forging some notes. That they were chopping cotton for John Terrell at the time, and that witness told appellant he could not do that; that it would get him into trouble; that he had a wife and family to support. That appellant said to him, that the way they would work it they would never catch up with them. That appellant said to forge the notes under different names, and not under witness' nor defendant's names, and to get the money on a long time; that if the notes were for a long time, they could not identify witness, and witness testified that appellant said for witness to go to the bank, as he was a stranger. That the note for $126 which witness passed on R. P. Edrington described in the indictment, was first mentioned June 28th, the night before it was passed. To the introduction of said testimony as to the said conversation on the farm, the appellant in open court objected, because the same was immaterial, irrelevant, illegal and incompetent; and because the same did not relate to the note described in the indictment, and because the same related to notes and forgeries in general and to other extraneous matters, and because said testimony was prejudicial; and because said matters occurred before the alleged offense. The proof in this case shows that Bullard forged the note in question. It certainly was admissible for the State to show by the accomplice that he was advised to forge notes by appellant—this being one of them—for the purpose of securing money. The testimony was admissible.

Bill of exceptions No. 2 shows that the State, after proving by Edrington that Bullard passed the note above-mentioned upon him, placed the accomplice Bullard upon the stand, and proved by him, that "he and appellant were working in the same neighborhood in Hill County; that appellant frequently visited his house; that on June 16, 1906, witness and appellant came to Hillsboro, and that appellant proposed that they raise some money by forging notes. That they stayed in town all day; that they had a check for $8 and some odd cents for wages; that John Terrell gave them said check. That this was all the money they had when they came to Hillsboro, and that appellant had no other money. And that if defendant had any money when he proposed the matter of

getting money on forged notes, witness did not know it. That witness gave appellant something in town that day; gave him $20, and appellant said he was going to Milford; that witness returned to witness' home, and on Saturday witness gave him (appellant) $5, and sent appellant to Hillsboro for a rig to convey witness' wife to Whitney, so she could catch the train, and make a visit in Erath County, and that they carried his wife to Whitney on Sunday and she took the train for Erath County. That appellant did not say on his return to witness' house on the preceding Wednesday how much of the $20 he had left. That witness' wife left on June 24th; that after she left, witness and appellant took the train for Waco, and on the train witness gave appellant another $20. That they spent the day in Waco, and then came to Hillsboro on the evening train, and then went back to the farm. That they had then run out of money. That next day (June 25th) appellant proposed that they had run out of money, and that they should raise some more money. Appellant said, "We can come to town the next day and forge another note and get some more money." And that on the 26th (the next day) they came to town, walked to town, had no conveyance nor horses; that when they came to town they had very little money. That night witness and appellant went to Dallas; bought two pairs of pants before leaving Hillsboro, also bought two shirts (they cost $1.25 each, and the pants $3 per pair). That witness bought their railroad tickets to Dallas; they cost $2 each. That witness had about $75 at that time, the two together had. That witness did not give appellant any money till they got on the train, then gave him a $20 bill. Stayed in Dallas all night. This was June 26th. Next morning witness and appellant went to Fort Worth on interurban. Witness gave appellant money in Fort Worth. That evening came south on train; came through Hillsboro. This was the 27th. That as they came through Hillsboro, appellant pulled the car window down, and said, "Don't let them see us in here." That they went on to Waco, and registered at the hotel, and stayed in Waco that night; and then came back to Hillsboro on the train the next day. That they settled their bills at hotel; that they were in Waco, June 27th. Came from there to Hillsboro, on June 28th, and got off the train near south yards. That they had a grip each, which were bought in Waco. That they left the grips at Burnett's store, near south yards. That defendant proposed getting off at south yards; and that defendant said he would get a delivery wagon and carry the grips to the bakery, and one to Hughes. And that on the night of June 28th, defendant said he would phone Clarence Logan, and he would go in with them. That defendant phoned for Logan, and that they were together at Hughes' place of business on east side of square; and that while over there, that the note for $126, which witness passed in this case, was first mentioned in the conversation at Hughes. That witness, defendant and Logan mentioned it. That next day (June 29, 1906) witness went to the State bank, and got the note drawn up and signed his name as Williams in the bank, and then took it out,

and signed Johnson and Schofield's names to it, and that day took the note back to said First State Bank, and got $121 on it." Appellant objected to all of this testimony as relating to matters prior to June 29th, as to the conversations between defendant and witness as to raising money, and as to forgeries and forgery of other notes, and as to payment of sums of money by Bullard to defendant, and making trips to Dallas, Fort Worth, and Waco, because the same transpired before the alleged offense, and because said matters were collateral and not connected with the offense charged against appellant, and that said testimony was an effort to prove other offenses and collateral crimes, not admissible against the appellant. There is no evidence in this bill of exceptions to show proof of collateral crimes against appellant. The case against the accomplice was reversed on the ground that the court did permit the introduction of evidence to prove separate and distinct forgeries. We held in that case, that it was error to do so; but it is not error to prove that the accomplice was a constant associate before and after the commission of the offense with appellant, and his giving him money, and dividing up the fruits of his ill-gotten gain with appellant. These are strong and very convincing evidences of the fact that appellant was an accomplice to the forgery, was advising, aiding and abetting in its commission. In the former opinion in this case we held that the circumstances above detailed showing the familiarity of the accomplice and the principal, their general dealings, one with the other, and in short any circumstances that occurred either before the forgery or after the forgery that showed any degree of intimacy and criminal knowledge on the part of the accomplice, could be legally introduced in the trial of this case. The bill of exceptions before us, and the others, present no matter other than that which comes within the rule just laid down, and we hold that the court did not err in admitting the testimony. See Hinson v. State, 51 Texas Crim. Rep., 102; 100 S. W. Rep., 939; Mason v. State, 31 Texas Crim. Rep., 306; and McGlasson v. State, 37 Texas Crim. Rep., 620.

The other bills of exception present similar matters to those discussed above, and we hold that all of said testimony was admissible. The facts in this case show that the accomplice Bullard, forged the note. He swears, as indicated in the record before us, that appellant advised, aided and abetted and encouraged and assisted him in the perpetration of the forgery. After obtaining the money on this forgery he took a trip, dividing the money with appellant, both of them being impecunious farm hands, and intimate associates on the farm; and the State further proved, as corroborative of his testimony, this association by other witnesses, and the fact that the accomplice paid for tickets for himself and appellant, and various and sundry circumstances going to show the guilty knowledge and guilty participancy of appellant in the crime charged, which were germane and proper. Under the authorities above cited, and under the former opinion of this court, we hold that said testimony was entirely admissible.

Appellant complains of the following charge of the court on the ques-

tion of accomplice: "You are further instructed that the indictment in this case charges, in the second count, that J. W. Bullard, on or about the 29th day of June, 1906, passed as true to one R. P. Edrington the $1.26 note introduced in evidence; that the said J. W. Bullard forged the names to the same, and that before said Bullard passed the same, the defendant (Gene Hinson) advised and encouraged said Bullard to pass the same to the said R. P. Edrington. You are instructed that the evidence shows that said Bullard is an accomplice, and that you cannot convict defendant upon his uncorroborated testimony, and you are instructed that the corroboration required by law is meant that said Bullard must be corroborated by other evidence as to the specific fact that the defendant encouraged said Bullard to pass that particular note on R. P. Edrington. To render this defendant guilty, the State must prove the following facts to your satisfaction by legal evidence beyond a reasonable doubt: First: That said Bullard forged the names to said note fraudulently and wilfully. Second: That said Bullard passed said note on R. P. Edrington. Third: That before he did pass it, that this defendant knew that said Bullard had committed said identical forgery, and then advised and encouraged said Bullard to pass that particular note on R. P. Edrington, and you are instructed that unless the State has corroborated said Bullard's testimony on the foregoing points, and you further believe that said Bullard's testimony to be true, you must acquit the defendant, and say by your verdict 'not guilty' although you might believe that the State had corroborated him on other facts."

This charge was according to the approved form, and is not upon the weight of evidence, but is a proper presentation of the law of an accomplice.

We find that the evidence supports the verdict in this case, and finding no error in the record authorizing a reversal, the judgment is in all things affirmed.

*Affirmed.*