## ÒLLIE WARREN v. THE STATE.

### No. 1387. Decided March 13, 1912.

### Rehearing denied June 26, 1912.

**1.—Forgery—Accomplice—Evidence—System.**

Upon trial of defendant as an accomplice to forgery, there was no error in admitting testimony that the party who was the principal in the forgery presented and had cashed, partly in merchandise and partly in cash the five checks which were alleged to have been forged by the principal by the aid and encouragement of the accomplice on trial, to prove the allegations in the indictment, and to show that the defendant was an accomplice to the forgery and to show the intent and system on the part of the defendant. Following Taylor v. State, 47 Texas Crim. Rep., 108, and other cases.

**2.—Same—Evidence—Identity of Defendant—Bill of Exceptions.**

Upon trial of defendant as an accomplice to forgery, there was no error in admitting testimony that the principal to the forgery, who had testified against the defendant, was in this store with a young man the day before she passed the alleged forged check, although witness could not identify the man with said principal; besides the bill of exceptions was defective.

**3.—Argument of Counsel.**

In the absence of a requested charge withdrawing the argument of State's counsel, with reference to a certain letter written by the principal to the defendant and admitted in evidence, there was no reversible error.

**4.—Same—Evidence—Letter—Practice.**

Upon trial of forgery there was no error in permitting the jury in examining a certain letter written by the principal to the defendant accomplice and which was introduced in evidence, and to permit the jury to take same with them in their retirement. Following Fergurson v. State, 62 Texas Crim. Rep., 162.

**5.—Same—Charge of Court—Words and Phrases.**

Where, upon trial of forgery, where defendant was indicted as an accomplice, and convicted upon the testimony of his principal corroborated by other testimony tending to connect him with the commission of the offense, there was no reversible error in the use of the words in the court's charge that proof of the passing of such forged instrument would not be sufficient corroboration, when the charge is considered as a whole.

**6.—Same—Charge of Court—Singling Out Testimony.**

Upon trial of forgery there was no error in refusing requested charges by which the defendant singled out certain specific testimony, and asked the jury not to consider same for the purpose of corroboration; besides the court's main charge sufficiently submitted the matter of corroboration.

**7.—Same—Charge of Court—Principal.**

Where the defendant was charged in the indictment as an accomplice to forgery, and the evidence sustained the allegation, there was no error in the court's failure to charge the jury that if they believed that defendant was a principal to acquit him.

**8.—Same—Corroboration—Sufficiency of the Evidence.**

Where the defendant was indicted as an accomplice to forgery, and his principal made out the offense completely against the defendant, and her testimony was corroborated by the testimony of other witnesses which tended to connect the defendant with the commission of the offense, the conviction is sustained. Following Nourse v. State, 2 Texas Crim. App., 216, and other cases. Davidson, Presiding Judge, dissenting.

Vol. LXVII Crim.—18.

#### 9.—Same—Rule Stated.

The corroborative evidence may be slight and entitled to but little consideration; nevertheless, the requirements of the statute are fully met if there be any corroborating evidence which of itself tends to connect the accused with the commissions of the offense. Following Nash v. State, 61 Texas Crim. Rep., 259, and other cases. Davidson, Presiding Judge, dissenting.

#### 10.—Same—Argument of Counsel.

In order to entitle the defendant to a reversal because of improper argument by State's counsel, he should promptly except to the same and request a special charge withdrawing same from the jury.

#### 11.—Same—Corroboration.

Where, upon trial of defendant as an accomplice to forgery, there was sufficient evidence other than that of the accomplice, tending to connect the defendant with the offense committed, there was no reversible error. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of an accomplice to forgery; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Goodson & Goodson,* for appellant.—Upon question of introduction of testimony as to passing of alleged forged checks: Carden v. State, 138 S. W. Rep., 598.

Upon question of want of corroboration: Jordan v. State, 128 S. W. Rep., 139; Maibaum v. State, 128 S. W. Rep., 378; Vails v. State, 128 S. W. Rep., 1117; Franklin v. State, 110 S. W. Rep., 64; Jones v. State, 129 S. W. Rep., 1118; Smith v. State, 124 S. W. Rep., 919; Denney v. State, 111 S. W. Rep., 404; Newman v. State, 116 S. W. Rep., 577; Crawford v. State, 34 S. W. Rep., 927.

As to error in the court assuming that the other transactions were forgery: Carden v. State, 138 S. W. Rep., 598; Welden v. State, 10 Texas Crim. App., 401; Jenkins v. State, 55 S. W. Rep., 814; Smith v. State, 70 S. W. Rep., 545; Chambers v. State, 44 S. W. Rep., 495.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of other offenses: Taylor v. State, 47 Texas Crim. Rep., 108.

PRENDERGAST, Judge.—The appellant was indicted as an accomplice to forgery, convicted and his penalty fixed at three years in the penitentiary.

The indictment charges that on or about December 10, 1910, one Dona Saulter forged her father, D. T. Hurley's, name to a check on the Hamilton Bank and Trust Company for twenty-three dollars, and in proper language further that before this forgery, appellant advised, commanded and encouraged her to commit the forgery, he not being personally present when the forgery was committed.

The State introduced the forger, Dona Saulter, who testified fully,

and, so far as her testimony could do so, made out the offense completely against the appellant. It is unnecessary to give her evidence in detail. We will give only such a statement of it as to aid in making clear the points raised and decided.

The evidence shows that Dona Saulter was a young girl about nineteen years old when the offense is charged to have been committed; that she lived with her father in the country in Comanche County near the town of Gustine; that in the latter part of the summer and fall of that year, 1910, the appellant was running a tailor shop at said little town of Gustine, cleaning and pressing. Some two or three weeks before this forgery he sold out his business at Gustine, stating that he was going elsewhere and locate in the same business. Dona Saulter's father's name was D. T. Hurley. She was married to Perry Saulter October 30, 1910, but lived with him a very short time, then separated from him. Appellant went with her off and on, all along during the summer and fall of 1910, and until certain blank checks were taken by her out of the back of her father's check book as hereinafter stated.

Dona Saulter, among other things, testified that somewhere from about the middle to the latter part of November, 1910, the appellant talked to her at her home. He asked her if her father had a check book, and when she told him he did, appellant then told her to tear some checks—four or five—out of the back of the check book, make out the checks for small amounts so as to arouse no suspicion, make them payable to herself and sign her father's name thereto; that he explained to her that the purpose of this was that he did not have any money and this was to raise money so that he and she could leave there together; that they intended to leave there whether they got the money on these checks or not; that upon his advice and at his request she went into her mother's trunk, got her father's check book out and tore out of the back five blank checks; that soon afterwards, or about that time, she went from her father's home near Gustine to Comanche, in Comanche County, to one of her married sister's home, she having two there at that time, and took these blank checks in her suitcase with her; that she had an understanding with appellant that he would come up to Comanche after she got the checks, which he did. That she went to Comanche on Wednesday before she forged the checks on the following Saturday. Before going to Comanche she had an understanding with appellant that he would come on the following Monday; that instead, he came on Friday after she went there on Wednesday and phoned her about noon on Friday that he was there, made an engagement with her for her to come down in town and meet him at Cunningham's store that evening. It seems that her sister, where she was stopping, lived out in the edge of the town of Comanche; that on that Friday evening, in accordance with her agreement with appellant, she met him at Cunningham's store in Comanche, had some little talk with him, but

not about the details of her forging the checks; that they separated, after making an agreement to meet elsewhere in the edge of the town which they did, where he met her with a buggy and took her out about a mile to a private place in the country; that they then and there talked the details of the forgery over and how to get the money thereon. It seems they had two or three such conferences in which he instructed her to draw the checks as he had before told her, in small amounts, ranging from about twenty-five dollars down to ten dollars, sign her father's name to them, payable to herself and make some of the checks for some odd cents as well as for dollars. His statement to her at the time for doing this was that nobody would then suspicion anything. He then detailed to her to what stores to take the checks and how to negotiate them, to buy a small bill of goods at each place, tender the check in payment and get the balance in money, and as soon as she got the money and the goods to take them and meet him at a certain place; that while she was negotiating these checks and getting the goods and money thereon he would be around in the town where he could watch after her, and if she got into any trouble he would come to her relief. She says he did stay around in the town, and while he was not with her, nor where she was that in going from store to store when she negotiated the checks and got the money and goods, she saw him on or across the street from her a few times. That after all the preliminaries were arranged by her she went back to her sister's and stayed Friday night; that on Saturday morning, December 10, 1910, while she was alone at her sister's she filled out the five blank checks, all payable to herself and signed her father's name thereto. One of the checks was for $23, another for $17.40, another for $10, another for $15, and the other for $25.50. She also testified that in the conferences with her while he was instructing her how to draw the checks and to whom and when to negotiate them, she was to take them to the respective stores as he had instructed her to do, in Comanche late Saturday evening after the banks had all closed; that she carried out, in detail, all that he had instructed and directed that she should do; that Saturday evening she took these respective checks, went into the said respective stores, bought small bills of goods, tendered the checks in payment, got the balance in cash; that she did this right straight along, it taking about thirty minutes from the time she went into the first until she had concluded with the fifth of the stores; that she at once gathered up the goods she had thus procured, met him where he was with the buggy, as agreed; that he took the goods from her, put them in the buggy, she and he then got in and drove off to the country. What became of the goods thereafter is not stated. He took charge of the goods, however, so that she would not have to take them to her sister's and raise the suspicion of her sister by having, at one time, so much goods; that she gave to him not only the goods, but $20 of the money she had thus received. That it was

also agreed between them that she was to leave there that night on the train and go to Baird, in Callahan County; that she went to the depot of the railroad that ran through Comanche that night some time before the train was due; that appellant, at her instance, while at the depot procured and sent to her by Sid Arthur, another of their confederates, whom she testified was also present at these interviews where it was arranged she should forge and negotiate said checks and procure the money and goods thereon, and while at the depot this confederate, Sid Arthur, brought her the lunch that appellant had procured; that she left that night and went to Baird, where appellant followed in a few days, and that they stayed there together a few days and then went from there to first one town and then another, staying together for several days, when they separated, he leaving her; that they did not meet afterwards, but she returned to Comanche some week or ten days after the forgery and negotiation of the checks; that he was not arrested until some time later. She also testified that she signed and negotiated each of said checks without the knowledge or authority of her father. Her father testified that he did not sign any of the checks and that he did not authorize her to sign or negotiate any of them for him.

By appellant's bill of exceptions No. 1 he shows that while the State was introducing its evidence before the jury it placed on the stand as witnesses Harry Slack, Sam Wilkerson, Harry Brin, Minnie Anthony, Ellen Moore and Jess Hughes, and propounded to each of them questions, intending to elicit and which did elicit from said witnesses respectively, that during the day of Saturday, December 10, 1910, and in the afternoon of that day, Dona Saulter appeared in the respective storehouses where they were employed and presented to and had cashed, partly in merchandise and the balance in cash, the five checks introduced in evidence, including the one on which the indictment is based, the other four set out and described in the statement of facts, presenting one and having the same so cashed at the store of the Comanche Mercantile Company, another at Catter and Company's, another at Brin and Company's, another at Higginbotham Brother and Company's, and another at Neely Harris Cunningham Company's; that at the time the questions were asked which drew out this testimony, he objected, because the testimony is irrelevant, immaterial, not proper to corroborate Dona Saulter and which could only corroborate her, not as to the offense with which the appellant was charged, but alone as to the offense committed by her in passing said forged instruments which could not be received for that purpose, as to the offense charged against appellant; and because the passing of said forged instruments by Dona Saulter was a separate and distinct offense from the forgery of the instrument; that the passage of said instrument was not res gestae of the offense against appellant and was not required to illustrate his motive or intent, and afforded no substantive evidence of his guilt of the crime with which he was

charged and was not necessary to show system, motive or intent on his part, would tend to prejudice the jury against appellant and would prejudice the jury against him and would also aggravate them to fix a higher punishment against him. The court overruled these objections and permitted each witness to testify and they did testify respectively as follows: "The witnesses Ellen Moore, Jess Hughes and Harry Slack, that they were employes of the Comanche Mercantile Company, and that on Saturday afternoon, December 10, 1910, Dona Saulter appeared in said store and cashed in goods and money one of said checks; and Sam Wilkerson, that he was an employe of Higginbotham Bros. & Co., and on said Saturday afternoon Dona Saulter appeared in said store and cashed in goods and money another of said checks; and Minnie Anthony, that she was an employe of M. G. Catter Co., and that on said afternoon Dona Saulter appeared in said store and cashed in goods and money another of said checks; and Harry Brin, that he was one of the firm of H. Brin & Co., and that on said afternoon Dona Saulter appeared in his store and cashed in goods and money another of said checks; and Benton Stailey, that he was an employe of Neely Harris Cunningham Co., and on said afternoon Dona Saulter appeared in said store and cashed another of said checks in said store."

The court, before allowing the bill, qualified it as follows: "In explanation of the same I desire to say that I limited in my charge, in what I conceive to be a proper instruction, the evidence complained of in this bill of exceptions. The evidence was admitted in the view that the court had the law to show system of the parties in the execution of the plan conceived and executed by them in the commission of the crime charged, and those connected with it and referred to in the bill of exceptions, which connection was so close as to constitute them in reality, all res gestae. Again, the prosecuting witness, Dona Saulter, testified that the defendant advised her to make out several checks and forge her father's name thereto and cash them at different places so as not to excite suspicion, the amount of each check being so small as not to excite comment and to buy some small items where each check was cashed and pay for it with the check, receiving the balance in money. She testified that she followed the advice of the defendant in this regard and that she did not consume more than thirty minutes of time in all in visiting the various stores and making her purchases, and cashing the checks in question and that while she was doing so the defendant was around in the town of Comanche, pursuant to his agreement with her, holding himself in readiness to give her any aid in his power if it should be needed in the matter of carrying out the plans of passing and cashing said checks as had been agreed upon by them. Again, immediately after the checks had been passed and she had received the goods and money mentioned in the bill of exceptions she met the defendant, who took charge of the goods purchased by her, and she told him of the pur-

chase of said goods and the passing of said checks, and of the receipt by her of the money, as stated by the witnesses in the foregoing bill of exceptions, and that later on that night she turned over to him twenty dollars of said money. One of the issues submitted to the jury in this cause was whether or not they believed the testimony of Dona Saulter to be true. I felt that the above testimony was admissible as bearing on that issue and that the defendant's connection with the transaction testified about and his knowledge of the same was sufficiently known to admit the same in evidence. As stated, the court limited the effect of said evidence in its charge."

Appellant's second bill of exceptions is to this effect: That while Dona Saulter was on the stand testifying for the State she was asked questions by the State intended to elicit and which did elicit from her that on Saturday afternoon, December 10, 1910, she went into the stores of the said mercantile establishments, hereinabove named, and at each of them passed and cashed in goods and money the said five forged checks. The appellant objected to this testimony at the time on the same grounds as that shown to the testimony of the other witnesses in the bill, above stated. The court in approving it qualified it as he had the other.

The next bill shows that the appellant objected to the testimony of Dona Saulter wherein she testified about forging the other four checks other than the one charged in this case, at the same time and under the same circumstances as hereinabove substantially stated. The objections to this testimony was substantially on the same grounds as those to the testimony shown by the first bill above. The court in allowing it qualified it as he had the others.

By appellant's bill No. 6 he objected to the introduction of the said four other checks above described on substantially the same grounds as to the testimony of the witnesses shown by bill No. 1 above. The court allowed it with the same qualification.

In an indictment of an accomplice to forgery it is, of course, necessary to properly charge the forgery itself which was done by the indictment in a separate paragraph in this case. Then it is necessary to follow that up in the indictment by charging an accomplice and the necessary allegations to show that the party charged is an accomplice. That was properly done by the indictment in this case in a separate paragraph.

This being the case it is, of course, necessary that the proof establish both the forgery and that the appellant was an accomplice to the forgery. All this testimony was admissible for this purpose. As to what was done at the same time in forging the other four checks and the negotiation of them and procuring the money and goods thereon as was done in this case that testimony was also admissible. This court in Taylor v. State, 47 Texas Crim. Rep., 108, said: "It has always been held by this court that where one is being tried for forgery, contemporaneous forgeries are admissible to illustrate the

purpose and intent, when necessary to develop the res gestae, or connect the accused with the offense on trial, and to show system on the part of defendant. By contemporaneous we do not mean to be understood as holding the forgeries must occur at one and the same time. It may have been months before or months after the forgery on trial. If they serve to illustrate, or to show system or make apparent the intent with which this act was committed, then they are germane to this transaction, and are admissible in evidence. McGlasson v. State, 37 Texas Crim. Rep., 620; Mason v. State, 31 Texas Crim. Rep., 306; Hennessy v. State, 23 Texas Crim. App., 340; Williams v. State, 38 Texas Crim. Rep., 128." The character of testimony objected to by these bills comes clearly within the spirit and substance of the rule above announced, and in our opinion the testimony, as shown by the bills and as qualified by the judge, was clearly admissible. Many other authorities might be cited showing that said testimony was admissible, but we deem it unnecessary.

By appellant's fourth bill he shows that while the State was introducing its evidence before the jury and while the State was examining the State's witnesses in chief it "introduced as a witness Mrs. Lucy Thomas, and in answer to a question propounded to her by the State she testified: 'I remember the circumstance of the checks being passed here in town by a young woman. I remember a young woman being in the store two or three days before the checks were passed. I have seen that woman today. She is here in attendance upon the court. While this woman was in the store that day there was a young man came in there and talked to this woman. That is the best of my judgment. I would not know the young man, but I remember there was one that came in and talked to her, but I would not know the man.'" The bill then states that appellant objected to said question and answers, "because her testimony in no way identified the defendant as the man she saw talking to the woman and did not identify the woman who was in the store and it was wholly immaterial and irrelevant as evidence against appellant and would tend to prejudice the case against him in that Dona Saulter had testified that on said day she was in said store where Mrs. Thomas was and the jury, by the admission of this testimony, would be led to believe that the same could be received as evidence in corroboration of Dona Saulter and on which corroboration they might predicate a verdict of guilty against him; whereas, said evidence was not only inadmissible because the same wholly failed to identify the parties, but if the same had identified both Dona Saulter and defendant, either one or both of them, it could not have been used as a circumstance to corroborate Dona Saulter, because if said parties did meet there, such circumstance would not and could not tend to connect the defendant with the commission of the crime with which he is charged."

This bill is clearly insufficient to require this court to pass thereon as shown by the rules long since adopted and enforced by this court.

See section 857, page 557, and section 1123, subdivision 2, of White's Annotated Code Criminal Procedure, for a statement of these rules and a collation of some of the cases establishing and enforcing them. We have several times in cases recently decided reiterated and re-stated these rules and cited these cases.

However, even if this bill was sufficient under these rules, it is our opinion that this testimony was admissible under the circumstances of this case and that appellant's objections go more to the weight than to the admissibility of the testimony.

By other bills appellant shows that he objected to the State's attor-ney's argument about the effect of a letter that was identified and proven up by Dona Saulter as having been written by appellant to her and received by her, shown in the record. The court gave appel-lant's special charges on this subject, instructing the jury not to con-sider the argument made by the State's attorneys which was objected to by appellant. It is not at all certain that the argument made by the attorneys was objectionable, but if it was, it was cured by the court giving said special charges of appellant on that subject and would not present reversible error.

As to the objection shown by these bills in regard to the letter being turned over to the jury at the jury's request, as explained by the judge in allowing the bill thereto, there was no error. The jury had the right to take the letter with the other papers in the case with them in their retirement. Article 731, Code Criminal Procedure; Ferguson v. State, 61 Texas Crim. Rep., 152, 136 S. W., 465.

In the motion for new trial appellant complains of this expression in the court's charge, "Nor would proof of the passing of such forged instrument be sufficient proof of corroboration." The paragraph of the court's charge in which these quoted words occurred is as follows: "In this case I instruct you that the corroboration is not sufficient if it merely shows the commission of the offense of forgery by Dona Saulter as alleged in the indictment, nor would proof of the passing of such forged instrument be sufficient proof of corroboration, the corroboration required is evidence tending to show that the defendant either advised, commanded or encouraged the witness Dona Saulter to commit the crime of forgery as alleged in the indictment." We think the jury could not have been misled by the language of the court objected to by appellant; but even if this charge was subject to the objection made to it by appellant and conceding that the jury might possibly be misled if it had not been corrected, it presents no reversible error whatever, because at appellant's instance, the court gave to the jury this special charge: "You are charged that the fact that Dona Saulter may have passed the forged checks and collected the proceeds of the same and her testimony that she did so or the testimony of any other person who testified that they saw her pass and cash the checks can not be received by you as evidence corrobo-rating the testimony of the said Dona Saulter that the defendant

aided and advised her to commit the forgery for which he is on trial, and you will not consider said evidence for such purpose." Taking the whole charge of the court on corroboration, the few words above quoted which are objected to by appellant could not have misled the jury.

Appellant requested several special charges by which he singled out certain specific testimony of different witnesses and in effect requested the court to charge that their testimony on certain points could not be considered by them for the purpose of corroborating the witness Dona Saulter, and that she could not corroborate herself. In our opinion there was no reversible error in refusing these charges. It would not have been proper for the court to have singled out, as was attempted to be done by these special charges, the testimony of the witnesses. It would have been misleading to the jury and would in effect have been a charge on the weight of the testimony. The court can no more do this against the State than it can against the appellant. Besides, the charge of the court on the subject of corroboration of Dona Saulter embraced correctly the charge on that subject and sufficiently embraced in a general way, which was proper, all of the testimony of the several witnesses singled out by these special requested charges.

By another special charge appellant sought to have the court to charge the jury, in effect, that if they believed appellant was a principal they could not convict him as an accomplice. This was based on the testimony of Dona Saulter of the proximity of appellant to her late Saturday evening when she passed on the various merchants all of said forged checks and procured the money and goods thereon. In our opinion the testimony called for no such charge. Without contradiction the testimony showed that Dona Saulter forged each one of the checks on Saturday morning and that appellant was not present at the time. The charge against him was that he was an accomplice to this forgery and not to the passing of the forged instruments.

The most serious objection that appellant has made and contends for is that there is no corroborating evidence of the testimony of Dona Saulter, introduced by the State, which tends to connect the appellant with the commission of the offense charged.

It is unnecessary to give the whole of the testimony of Dona Saulter or all of the testimony of the other witnesses. We have given in the statement of the case sufficient of her testimony.

This court, long ago, laid down the correct rule on the subject of corroborating the testimony of an accomplice by other testimony *tending* to connect the defendant with the commission of the offense, in Nourse v. State, 2 Texas Crim. App., 316, after quoting our statute on the subject, as follows:

"Art. 801. A conviction can not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect

the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense," said:

"Before the adoption of our Code, the rules of evidence known to the common law of England, both in civil and criminal cases, governed in this State, and they still govern, except where they are in conflict with the provisions of our Code of Procedure, or some other statute of this State. Under the common law the rule of evidence as to the corroboration of accomplices is somewhat peculiar. Says Mr. Roscoe: 'It has been repeatedly laid down that a conviction upon the testimony of an accomplice, uncorroborated, is legal. The point was considered by the twelve judges, and so decided, in Rex v. Atwood, 2 Leach C. C., 521, and again in Rex v. Durham, 2 Leach C. C., 538.' Roscoe's Cr. Ev., 120, 121, and authorities cited. The evidence of an accomplice is altogether for the jury (under the common-law rules of evidence), and the jury, if they please, may act upon it without any confirmation of his statement; but it is held proper for the presiding judge to advise them not to convict if the testimony of the accomplice is uncorroborated. Under article 3118 of our Code the testimony of an accomplice must be corroborated to support a conviction. It has been decided both by the Supreme Court and the Court of Appeals in this State that the term 'accomplice,' as used in article 3118, applies, not only to accomplices in a technical or restrained sense, but to all witnesses who are particeps criminis, whether as principal or accessories. Bob Irvin v. The State, 1 Texas Ct. of App., 301, and authorities therein cited.

"It will be seen that to justify a conviction on the testimony of an accomplice, there must be some evidence which, of itself and without the testimony of the accomplice, *tends* in some degree to connect the accused with the commission of the crime. The Supreme Court of California (in the case of The People v. Melvane, 39 Cal., 614), say: 'The corroborative evidence may be slight and entitled to but little consideration; nevertheless the requirements of the statute are fully fulfilled if there be any corroborating evidence which of itself *tends* to connect the accused with the commission of the offense.' This decision was rendered under a statute very similar to ours in regard to the corroboration necessary to be had to the testimony of an accomplice to support a conviction. Article 375 of the Code of California is as follows: 'A conviction can not be had upon the testimony of an accomplice unless he be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof.' It is a mistaken idea to suppose that the corroborating evidence must conclusively of itself connect the defendant with the commission of the offense. If so, there would be no use for the testimony of the accomplice." See also Jones v. State, 4 Texas Crim. App., 531; Tooney v. State, 5 Texas Crim. App., 193; Simms v. State, 8

Texas Crim. App., 243; Clanton v. State, 13 Texas Crim. App., 157, and Moore v. State, 47 Texas Crim. Rep., 415. See also the opinions of Judge Ramsey and Judge Harper, adopting the opinion of Judge McCord in Nash v. State, 61 Texas Crim. Rep., 259, 134 S. W. Rep., 714-716, 718 et seq.

The testimony of Hurley, Dona Saulter's father, corroborated her as to his check book, and the fact that five of the blank checks in the back thereof were torn out about the time she stated that she tore them out; that the appellant was with her off and on all along about the time these checks were taken out and that Dona Saulter went up from her home to her sister's, in Comanche, at the time she testified she was there and met appellant and forged these checks.

The testimony of Mrs. Lucy Thomas could properly be considered by the jury to corroborate Dona Saulter in that it was the appellant who met her in the store where she was working at the time, which was only a day or two, or probably the day before, Dona Saulter forged and negotiated these checks.

The appellant's witness Harrison corroborated her in that the appellant sold out his business at Gustine about the time Dona Saulter testified that he first proposed to her the forgery of these checks and procuring money and goods thereon and that at about the time she testified he met her in Comanche, this witness says he saw him in Comanche once or twice; that he was not engaged in any business there and that all this occurred at just about the time Dona Saulter places the appellant there in consultation with her in carrying out the plan of the forgery and procuring the money and goods on the forged checks.

The various clerks of the mercantile establishments where she negotiated and procured the money and goods on these forged checks also corroborate her that it all occurred Saturday evening, December 10, 1910, in accordance with the plan laid and carried out at his suggestion and direction.

One witness also testified that he saw her at the depot that night where she was to take the train, and that he also saw Sid Arthur, one of the parties in crime, there at the depot that night, she having testified that appellant there sent to her by Sid Arthur a lunch.

This, in connection with Sheriff Jackson's testimony, which, we think, establishes the flight of the appellant, and his, the sheriff's, unsuccessful inquiry and search for appellant until some time later when he located him in Hays County, four hundred miles from where the offense had been committed. There are other circumstances shown by the testimony in this case, corroborating Dona Saulter, which tended to connect the appellant with the commission of the offense sufficiently to have satisfied, as it did, the jury and caused them to believe that her testimony was true and that the appellant was guilty, as shown by her testimony and the facts and circumstances detailed by the other witnesses in the case. After a careful consid-

·eration and reconsideration of the testimony in this case we are satisfied that the verdict of the jury is in accordance with the law and is sustained by the evidence, and so believing, the judgment will be affirmed.

*Affirmed.*

Davidson, Presiding Judge, dissents.

ON REHEARING.

June 26, 1912.

PRENDERGAST, JUDGE.—By his motion for rehearing herein appellant earnestly and forcibly contends that the court has incorrectly decided this case on several grounds. We always appreciate such contentions and arguments by attorneys when couched in proper and respectful language, as is done by appellant's attorneys in this case. If the court is wrong in the decision of any case, neither the appellant himself, nor his attorney, can be more anxious or desirous of having the error corrected than this court itself.

Our attention is called to a mistake made in the original opinion which we desire to here now correct. In discussing appellant's bill to his objections to the argument of the State's attorney about the effect of a ˙letter that was identified and proven up by the witness Dona Saulter as having been written by appellant to her, we incorrectly stated that the court gave appellant's special charges on this subject, instructing the jury not to consider the argument made by the State's attorney, which was objected to ˻by appellant. We do not understand now how we made this mistake.

The record shows that appellant in no way requested in writing or otherwise any charge not to consider the argument objected to. The court in the qualification of the bill makes an explanation at some length, but, in view of our holding herein, it is unnecessary to state the court's qualification.

In 1 Buckler's Crim. Digest, p. 92, sec. 170, he lays down the correct rule: "In order to entitle the defendant to a reversal because of improper argument by the prosecuting attorney, he should promptly except to the same and request a special charge withdrawing the same from the consideration of the jury in order to save the question on appeal." And cites a large number of cases supporting this rule.

Again, on the same page he states this correct rule: "Where the remarks of the prosecuting attorney in argument were excepted to, but no charge in regard to them was asked, no error is presented," citing a large number of cases supporting this rule.

In Masterson v. State, 34 S. W. Rep., 279, this court held that where appellant objected to an improper argument of the State's attorney that he should also prepare a written charge and present to the court, instructing the jury not to consider such objectionable remarks, and if the court refused to sustain his objection, the ap-

pellant should not only except to the ruling of the court not sustaining his objection, but except also to the refusal of the court to give the requested written charge. As appellant did not request any written charge no reversible error was committed by the court on this subject.

Appellant again earnestly and persistently contends that there is no evidence in the record sufficient to corroborate the testimony of Dona Saulter, the accomplice. In the original opinion we quoted the authorities and the rules on this subject. It is unnecessary to again restate them or to quote or further discuss them. We have again carefully considered the evidence, and our opinion is confirmed that there is sufficient evidence other than that of the accomplice, tending to connect the defendant with the offense committed and we can not disturb the verdict of the jury.

The motion is overruled.

*Overruled.*

DAVIDSON, Presiding Judge (dissenting). — This conviction should never have been obtained, nor ought it to be permitted to stand. Appellant was indicted as an accomplice to forgery. There is no contention or pretense that he committed the forgery. The evidence is barely sufficient, if sufficient at all, to sustain that part of the State's case that was intended to show the principal committed the forgery. However that may be, it is unnecessary here to discuss it. Appellant was charged with advising the woman to commit the forgery before the checks were written. The only evidence that I can find in this record which tends to corroborate the woman was the fact that she and appellant, either supposedly, or did in fact, have illicit sexual relations, but the fact that a man has illicit intercourse with a woman would not be corroboration, under the proof that he advised that woman to commit the crime of forgery. I thought my brethren would cite some authority laying down the proposition that illicit intercourse with a woman would be corroboration of her testimony that he advised her to commit the forgery, but they did not, nor have they furnished any valid reason why such intercourse would prove or tend to prove him an accomplice in the offense of forgery. I do not believe any candid legal mind can read this record and find any fact in it that would tend to place appellant in such attitude to this case as would warrant the conclusion that he did advise the woman to commit forgery. It is the first instance, so far as I am aware, where an Appellate Court has held that illicit sexual intercourse is corroboration of an accomplice witness to the crime of forgery. If adultery or fornication or illicit intercourse between a man and a woman is to be taken as evidence of forgery, this man might be guilty. But I do not assent to the affirmance on this theory, and it is all the State has in the way of corroboration,

and I believe my brethren ought not to have sustained this conviction upon that theory.

There are other questions in the case that ought to reverse it. The bills of exception reserved by appellant in the court below plainly manifest reasons why this judgment should be reversed. I do not care to go into a discussion of the questions further than as stated. It is not often a member of the court would be justified in dissenting from the facts, and never unless there is a want of sufficient evidence to justify a conviction in the face of our law which requires the over-coming of the presumption of innocence and reasonable doubt. If appellant had not indulged his amorous propensities, my brethren would have had nothing upon which to base their finding. He was evidently wrong morally and perhaps legally in his amours, but that is not evidence of forgery as my brethren seem to think it is, nor does it constitute corroboration of the accomplice.

I therefore dissent.