## Louie Coffman v. The State.

### No. 555.    Decided April 19, 1911.

**1.—Murder—Change of Venue—Prejudice—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence upon the application of change of venue showed that the feeling and prejudice in the county of the prosecution throughout its length and breadth was adverse to defendant, it was reversible error for the lower court not to have changed the venue.

**2.—Same—Character of Prejudice.**

It does not matter on a question of this character whether the prejudice is against the defendant 'or against his case; in either event he cannot get a fair and impartial trial.

**3.—Same—Evidence—Withdrawal of Illegal Testimony.**

Where, upon trial of murder, certain illegal testimony was permitted to remain before the jury until after a couple of speeches had been made, one for the State and the other for the defense, when the court withdrew the evidence from the jury and verbally instructed them not to consider it, the same was reversible error.

**4.—Same—Connecting Testimony—Practice.**

Where, in the trial of a criminal cause, the proffered testimony is of a serious character, the connection should be shown with other evidence and the predicate laid in advance of the admission of such testimony.

**5.—Same—Hearsay. Evidence—Declaration of Third Party.**

Upon trial of murder, testimony with reference to a conversation carried on between deceased and a third party on the night prior to the homicide and in no way connected therewith, and in the absence of the defendant, was inadmissible.

**6.—Same—Immaterial Evidence.**

See opinion for admonition of court that testimony should be confined to matters pertinent to the issues of the case.

**7.—Same—Charge of Court—Impeachment—Weight of Evidence.**

Our statute has made a difference between the credibility of the witnesses and the weight to be given to their testimony, and where upon trial of murder, instead of limiting certain impeaching testimony to the credibility of the witnesses attacked, the court instructed the jury that they could only weigh such testimony and could not consider it for any other purpose, the same was reversible error.

**8.—Same—Argument of Counsel—Admonition of Court.**

See opinion wherein State's counsel are admonished to confine themselves to the record in their argument to the jury.

Appeal from the District Court of Collin. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Smith & Wilcox* and *J. R. Gough* and *R. C. Merritt,* for appellant. Upon question of prejudice on motion to change venue: Meyers v. State, 39 Texas Crim. Rep., 500, 46 S. W. Rep., 817; Randle v. State, 34 Texas Crim. Rep., 43, 28 S. W. Rep., 953; Barnes v. State, 42

Texas Crim. Rep., 297, 59 S. W. Rep., 882; Alarcon v. State, 83 S. W. Rep., 1115; Gallaher v. State, 40 Texas Crim. Rep., 296, 50 S. W. Rep., 388; Faulkner v. State, 43 Texas Crim. Rep., 311, 65 S. W. Rep., 1093; Cortez v. State, 44 Texas Crim. Rep., 169, 69 S. W. Rep., 536; Dobbs v. State, 51 Texas Crim. Rep., 629, 103 S. W. Rep., 918.

On court's charge on question of credibility of witness and weight of testimony: Elkins v. State, 48 Texas Crim. Rep., 205, 87 S. W. Rep., 149; Dean v. State, 77 S. W. Rep., 803; Howard v. State, 25 Texas Crim. Rep., 686, 8 S. W. Rep., 929; Winn v. State, 34 Texas Crim. Rep., 37, 28 S. W. Rep., 807.

On question of argument of counsel: Hanna v. State, 46 Texas Crim. Rep., 5, 79 S. W. Rep., 544; McDaniel v. State, 46 Texas Crim. Rep., 560, 81 S. W. Rep., 301; Wallace v. State, 46 Texas Crim. Rep., 341, 81 S. W. Rep., 966; Barnard v. State, 86 S. W. Rep., 760; Washington v. State, 77 S. W. Rep., 810; Shaw v. State, 57 Texas Crim. Rep., 474, 123 S. W. Rep., 691; Brown v. State, 57 Texas Crim. Rep., 269, 122 S. W. Rep., 565.

Upon question of withdrawing illegal testimony: Haney v. State, 57 Texas Crim. Rep., 158, 122 S. W. Rep., 34; Hart v. State, 57 Texas Crim. Rep., 21, 121 S. W. Rep., 508.

*C. E. Lane,* Assistant Attorney-General, and (*John A. Mobley* former Assistant Attorney-General), and *George P. Brown,* and *Abernathy, Abernathy & Abernathy,* for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, his punishment being assessed at death.

1. When the case was called for trial appellant moved for change of venue, which was overruled after a full hearing. The evidence is rather voluminous on this question, and the witnesses testifying cover practically the entire county as to the feeling against appellant. All the witnesses, or practically all of them, state they had heard the case discussed frequently, and that the expression of opinion and thought in the county were adverse to appellant. Some of them state that they believed a fair and impartial jury could be had in the county, but this opinion was based on their belief that there were good men in the county who could discard their prejudice and give appellant a fair trial. Some of the witnesses said that they knew of no personal prejudice against appellant. Practically all the witnesses testified that they never heard a single favorable expression in the county towards the appellant; that many of them expressed the opinion and belief that appellant ought to be hanged. To illustrate, the witness Goostree testified that he was a drummer for the wholesale grocery house of Boren & Stewart, and that he had been making trips once a week for eight years over the eastern half of Collin County and partly over the western half of Collin County. That he put in his entire time traveling. That he had heard this case discussed in every place he went, and the

sentiment was against the appellant; that people generally say that he is guilty. He also stated that they had prejudiced his case and pronounced him guilty, and the expressions toward him were bitter. The prejudice even extended to the lawyers defending him, and especially to one of them, Clarence Merritt. He further stated he had never heard anything in appellant's favor, but the people would say that he ought to be hanged. That he had met a great many people and the subject was discussed generally, and that was the general opinion among the people. The witness Mallow testified that he lived in Lebanon, about fifteen miles southwest of McKinney, and had lived there about sixteen years; that he was deputy tax assessor, and traveled over precinct No. 6 last spring, which precinct extended from eight to ten miles south of Lebanon, or to Dallas County line, north to the western precinct, and includes the towns of Lebanon, Frisco, Prosper and Rhea Mills, and includes the western and southwestern section of Collin County. This witness said he had heard the case discussed frequently, and from the discussion he had heard the sentiment was against the appellant; that he had never heard any favorable expression at all. That he did not believe a jury could be obtained that had not formed some opinion with reference to the facts of this case, and that such opinion was against appellant; that there were as many as a thousand voters in said precinct, and that he had talked to and heard at least fifty percent express themselves, and that he had never heard a single favorable expression to appellant. That they all seemed to have prejudged his case as far as witness had heard, and some expressions were very bitter. The witness Brown testified he lived twenty miles southeast from McKinney, on the Cotton Belt Railroad, between Nevada and Wylie; that he had heard appellant's case talked about, but could not tell how many times; that the talk he had heard was against appellant. He had heard one man say that if he was a juryman he would weigh the evidence just as clear as he possibly could, and would not let malice enter into his verdict. Robbins testified that he lived at Allen fourteen years. He had heard the case discussed since it occurred. That he had heard it talked about Allen and everywhere else he had gone, and the talk was unfavorable to appellant. That the parties he heard talking about the case generally expressed their opinion that he was guilty. That there were about four hundred and fifty people living in the town of Allen. Gaddy testified that he had heard people talk about the case, and they seemed to think appellant was guilty; most of them so expressed themselves, and he thought they could not get a jury in his community who had not formed an opinion. Gladden testified that he lived twelve miles northwest of McKinney, about four miles from Weston; he had heard the case discussed; that it was common talk in the neighborhood for some time when people would get together. The discussion was unfavorable to appellant. He says: "I do not think I ever heard any one make a favorable expression." Bell testified that he lived four

and one-half miles northwest of McKinney for thirteen years; he had heard the case discussed, and had heard it in McKinney and where he lived; that he had not been to any other place lately; the talk was against appellant, and that he was guilty. The case, he says, was discussed generally, and he never heard any expression in his favor. Mc-Clure testified that he lived twenty miles northeast of McKinney, near Moreland. He had heard the case discussed, and the sentiment was' unfavorable to appellant. That he had never heard a favorable expression. Ball testified he lived three miles and a half west of Plano, and southwest of McKinney, all his life. He had heard the case talked about around Plano. That the sentiment that they expressed was unfavorable to appellant. Smith testified that he had heard no talk that was favorable to defendant; that he had lived southwest of McKinney for twenty years. Bennett testified he had lived at Wiley for twenty-one years; this is about twenty miles southeast of McKinney; that the sentiment there was against appellant; that he never heard any one say anything for him; he had heard people generally express themselves as to his guilt, and that he was guilty. Gay testified he was justice of the peace at Nevada, twenty-five miles southeast of McKinney; that his precinct was bounded on the south by Rockwall County and on the east by Hunt County, and on the north by precinct No. 2; that his precinct was about ten miles square; that he had heard the case discussed a good deal; the trend of the discussion, he says, was against appellant, and he could not recollect having heard any one say anything for him; that they said he was guilty from what they had heard. Kerr testified that he had heard the matter discussed, and the sentiment was against appellant; that he had heard one man speak favorably of him—did not recollect who he was—but he knew of no other favorable expression. He said: "I think the majority of the people I heard express an opinion believe he was guilty. I do not think I ever heard any one say he was not guilty." This testimony might be prolonged indefinitely. We have not thought it advisable to go further into this evidence.

We are of opinion that the change of venue should have been granted, and the trial court is ordered so to do. This question has been discussed in so many cases under a similar state of facts that it is hardly necessary to enter into a discussion of the reasons why the venue should have been changed. In the Faulkner case, 65 S. W. Rep., 1095, it was said: "The statements of the witness, . . . it occurs to us, was enough, and more than enough, to convince the most skeptical mind that the case against appellant . . . was well known and thoroughly discussed throughout the limits of the county, and that the evidence against appellant had permeated every portion of that community. True, a majority of the witnesses say that they could give appellant a fair and impartial trial, and they believed he could get such trial in the county, but they admit they had formed an opinion to the effect that appellant is guilty . . . and that he

ought to be hanged. . . . If fair trial by jury, as guaranteed by the Constitution, be of any worth, what bides it, or of what avail is it, if a citizen charged . . . is to be tried by a jury composed of men who have heard all about the offense and who believe he is guilty and ought to be hanged, and yet believe, . . . no doubt honestly, . . . that they can give defendant a fair and impartial trial? Prejudice is a sinister quality. It may possess a man and he be not aware of it; or, being aware of it, he may purposely conceal it in order that he may vent his revenge. In according a change of venue our statutes wisely provide against that prejudice which may creep into the jury box. It is intended to avoid, as far as possible, the impanelment of even one prejudiced juror, and our decisions proceed upon the idea that, where a crime, on account of its atrocity, has become notorious, and the prevailing sentiment in the community is that the party charged with the offense is guilty, he is entitled to a change of venue." To the same effect is Cortez v. State, 44 Texas Crim. Rep., 169, 69 S. W. Rep., 536.

It does not matter under questions of this character whether the prejudice is against the defendant or against his case. If the prejudice is against him personally he can not get a fair trial. If it is a prejudgment of the case, the reason is equally as strong why the change of venue should have been granted. This question was discussed in Randle v. State, 34 Texas Crim. Rep., 43, 28 S. W. Rep., 953; see also Meyers v. State, 39 Texas Crim. Rep., 500, 46 S. W. Rep., 817; Barnes v. State, 42 Texas Crim. Rep., 297, 59 S. W. Rep., 882; Alarcon v. State, 83 S. W. Rep., 1115; Gallaher v. State, 40 Texas Crim. Rep., 296, 50 S. W. Rep., 388; Dobbs v. State, 51 Texas Crim. Rep., 629, 103 S. W. Rep., 918. These are a sufficient number of cases, we think, to sustain this ruling in regard to the change of venue.

That the feeling in the county of Collin throughout its length and breadth was adverse to appellant is not to be questioned under this state of facts. If a fair trial by an impartial jury guaranteed to the accused by the Constitution means anything, this appellant was entitled to a change of venue. He was accused of murdering his wife, and the burden of the State's story was to show that she was asleep when she was shot. A killing of this sort, even where the victim is a man, usually stirs up a community extensively and widespread, but where a sleeping woman is alleged to be the victim, the intensity of that feeling is acutely intensified. The more harrowing the details of the murder of a woman, or even of a man, the more closely should the trial court scan evidences of prejudice when the change of venue is sought. The more widespread in the community the feeling of prejudice against the accused, or the conclusion of his guilt, the more certainly ought the court to look closely to the end that the constitutional impartial jury may be obtained. For this error this judgment must be reversed.

2.  Several bills of exception were reserved to the ruling of the court in admitting certain testimony.  Objections upon various grounds were urged at the time of the admission of the evidence.  It was permitted to remain before the jury until after a couple of speeches had been made, one for the State and one for the defense, when the court withdrew the evidence from the jury, and verbally instructed them not to consider it.  This ought not to have occurred.  It was clearly illegitimate, and served but to prejudice the case in the minds of the jury.  Why matters of this sort should be pressed by the State when the only effect is to jeopardize the conviction, is not readily understood.  Every criminal case should be tried with the distinct proposition in view that it is fundamental that the accused is presumed innocent until he has been shown guilty, and this beyond a reasonable doubt.  If the salient features of the case, the real substantial facts, are sufficient to justify the conviction, the State has no necessity for doubtful testimony, much less ought illegitimate testimony to be pressed into the case for transient success.  Every case should be tried with the ultimate end and object in view that when the verdict has been rendered and the judgment entered, it has been so tried that it becomes a finality.  We have had occasion to reverse judgments before where illegitimate testimony had been admitted and after discussion before the jury withdrawn.  This is the most prejudicial way possible to emphasize illegal evidence and its baneful effect upon the trial of the case.  It may occur occasionally that illegitimate evidence gets into a case under promise to connect it up later by other evidence, but such testimony, if not connected, should be at once withdrawn as soon as failure to connect to it is discovered.  We would suggest that where the testimony is of serious character, that the connection should be shown and the predicate laid in advance of admission of such evidence.  This matter was reviewed at some length in the case of Darnell v. State, 58 Texas Crim. Rep.; 585.

3.  Evidence of a conversation carried on between deceased and a lady friend during the evening prior to the homicide at night was introduced in evidence.  It had no connection with this case, but about matters altogether different and disconnected.  Objection was urged to this testimony.  Appellant was not present, and was not aware of it so far as this record is concerned.  Upon another trial this testimony should not be admitted.  The conversation was with reference to securing some milk for the benefit of the family of the deceased.

4.  There are some other questions in regard to the admission and rejection of testimony, but what we have said above, we think, will sufficiently indicate to the trial court that the introduction of evidence should be confined to pertinent matters.

5.  Several objections are urged to the charge, and the refusal to give requested instructions.  It is not the purpose of this opinion to enter into a detailed statement of the facts.  The State's theory was that appellant killed his wife while she was asleep, shooting her

with a shotgun. There is evidence that their lives had not been pleasant in their relations with each other; that they both drank, and to excess at times, and during these occasions there would be more or less friction. Against appellant the State introduced threats to take the life of his wife. As to the conduct of the wife, we do not propose to detail the evidence on such occasion as was shown by the testimony. The evidence further discloses that at night two shots were fired or heard at the residence of appellant and deceased. They were almost simultaneous. Appellant came running down the road towards a neighbor's in his night clothes. His statement was that his wife had shot him through the hand while he was asleep, then committed suicide by use of the shotgun. The evidence discloses that appellant was shot through the hand with a pistol ball, and deceased was shot in front of the head and a ghastly wound inflicted. Death was, of course, instantaneous. The bed had been occupied by two. Appellant's statement was that he was asleep and he was awakened by a sting in the hand, and found that he was shot. That he immediately jumped up and lighted a lamp and deceased shot herself with a shotgun. She was lying in bed. There was evidence showing that the ball had passed through appellant's hand, lodged in the wall in such relation to the position that he was occupying on the bed, or could have occupied on the bed, as to give color to his story that he was shot while he was lying on the bed. The range of the bullet, if shot by the deceased, would justify such conclusion. The State contended that this whole matter was fabricated by appellant, and that he shot himself with the pistol after killing his wife, and introduced evidence to the effect that of the two shots fired that from the shotgun was first. This is a sufficient statement of the case for the purposes of discussing the charge. We are not passing here or intending to pass upon the sufficiency of the evidence to support either theory, that made by the State or that by the appellant. This is a matter with which this court would have little concern.

The court gave this charge: "Certain evidence has been introduced before you to the effect that certain witnesses may have at some other time and place given evidence or made statements inconsistent with and contradictory of the evidence or statements of said witnesses as detailed by them on the stand before you, and on this you are instructed that you can only consider said statements or evidence of such witnesses, made at some other time and place, than on the witness-stand in this trial for the purpose of weighing the testimony of the witnesses on the stand before you, and you can not consider it for any other purpose."

Exception was reserved to this charge on several grounds. These exceptions were well taken. The jury are the exclusive judges of the weight of the evidence and the credibility of the witnesses. Such testimony in one sense is admitted as a criterion of weighing the testimony of the witnesses, it is true, but this character of evidence is in-

troduced mainly for the purpose of affecting the credibility of the witnesses, and inasmuch as the jury are to decide these questions, they should be properly instructed in regard to the law applicable thereto. Elkins v. State, 48 Texas Crim. Rep., 205, 87 S. W. Rep., 149; Dean v. State, 77 S. W. Rep., 803; Howard v. State, 25 Texas Crim. Rep., 686, 8 S. W. Rep., 929; Winn v. State, 34 Texas Crim. Rep., 37, 28 S. W. Rep., 807. Numerous other cases might be cited, but these are sufficient.

In Elkins v. State, supra, the court used this language: "The question raised is the insufficiency of this charge, in that it limits the effect of the impeaching testimony simply to the weight the jury might attach to the evidence of the prosecutrix; that this is not a sufficient presentation of the law, inasmuch as the impeachment of the witness is legally for the purpose of affecting her credibility. We believe this contention is correct. Our statute has made a difference between the credibility of the witnesses and the weight to be given their testimony, and the difference between these propositions is readily perceivable. The jury are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. A charge omitting that phase of the law with reference to the credibility of the witnesses would not be a compliance with the statute when charging on the law of the case generally. The impeachment is for the purpose of affecting the credibility of the witnesses; . . . in other words, for the purpose of inducing the jury to believe that the witness impeached has testified falsely. We are of the opinion that whenever the testimony of the State's witness is attacked, as in this case, the charge should be given as contended by appellant."

In the Dean case, supra, it was said: "As we understand the rule, the jury may entirely discredit and disbelieve a witness who has been impeached; yet the court told the jury that it was introduced simply and solely for the purpose of enabling the jury to weigh the testimony of the witnesses thus impeached. We are of the opinion the charge was too restrictive."

6. Numerous objections were urged to the argument used by different State's counsel during the discussion before the jury. We are of the opinion that some of the remarks are of sufficient importance to require this court to reverse. We do not purpose, however, to enter into a discussion of those matters, as they may not occur upon another trial, and should not. While this court had commended the zeal of attorneys in the interests of their respective sides in litigated cases, yet it has had occasion to criticise more or less cogently the extreme length to which these arguments have gone. We have even been impelled to reverse cases because of flagrant violations of the rule in regard to arguments. While the zeal is commendable, yet that zeal ought to be curtailed within the provisions of the law, and the rights of the accused when his life and liberty are sought. The accused is entitled to a fair trial as much from the view-point of argument be-

fore the jury almost as strong as the introduction of illegal testimony. Counsel in the prosecution of cases should stay within proper bounds and not permit their zeal to overstep the legal rights of the accused.

7. There are other questions of interest in the case, but we are of opinion that they will not arise upon another trial in view of what has been said.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*