E. F. STOVALL v. THE STATE.

No. 7341.  Decided March 12, 1924.

1.—Bribery—Indictment—Change of Venue.

Where, on May 3, 1921, an indictment was presented in the District Court of Hill County charging appellant with the identical offense charged in the present indictment, and the record showed that the venue was changed on motion of appellant to Navarro County, and that the present indictment was returned into the District Court of Hill County on March 10, 1922, and the prosecution in Navarro County was dismissed on March 25, 1922, the motion to quash the present indictment for the reason that when it was returned the prosecution for the same offense was then still pending in Navarro County, was correctly overruled. Following   Cock v. State, 8 Texas Crim. App., 659.

**2.—Same—Pendency of Indictment—Grand Jury.**

It is well settled in this State that dependency of one indictment does not prevent the grand jury from returning subsequent indictments charging the same offense. Following Williams v. State, 20 Texas Crim. App., 357.

**3.—Same—Change of Venue—Prejudice—Impartial Trial.**

When the case was called for trial appellant filed a motion asking that he be granted a change of venue on account of great prejudice in his county and that he could not obtain a fair and impartial trial, the State controverted the matter set up in the motion, and evidence was heard and the court refused to change the venue, held that under the facts in the instant case this was reversible error. Following· Randle v. State, 34 Texas Crim. Rep., 43, and other cases.

Appeal from the District Court of Hill. Tried below before the Honorable Horton B. Porter.

· Appeal from a conviction of bribery; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Frazier & Averitte,* and *Collins, Dupree & Crenshaw,* for appellant —On question of insufficiency of indictment because of change of venue and pending of other indictment: Berg v. State, 64 Texas Crim. Rep., 612; Woodring v. State, 33 Texas Crim. Rep., 26.

On question of change of venue: Blain v. State, 31 S. W. Rep., 368; Cortez v. State, 44 Texas Crim. Rep., 169; Gallagher v. State, 40 id., 296; Faulkner v. State, 43 id., 311; Coffman v. State, 62 id., 88; Myers v. State, 39 id., 500, and cases stated in the opinion.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney, and *Will M. Martin,* County Attorney, *J. E. Clarke,* Assistant County Attorney, and *Morrow & Stollenwreck,* for the State.—On question of change of venue: Barnes v. State, 59 S. W. Rep., 882; Moore v. State, 96 id., 331

HAWKINS, Judge.—The indictment alleges that appellant was a County Commissioner of Hill County, and that there was pending before the Commissioners Court the letting of a contract for the construction of roads in Road District Numbers 3, 6, 7, 10 and 12 in said county, and also the matter of the sale of bonds theretofore issued by the said Road Districts; that appellant agreed to accept from one W. S. Bibb, Jr. a bribe in the sum of $7000 upon condition that appellant would vote and advocate in said court the sale of the bonds, and letting of such contract to Bibb & Hughes, a firm composed of Joseph D. Hughes and the said W. S. Bibb, Jr. The trial resulted in appellant's conviction with a punishment of six years in the penitentiary.

On May 3d, 1921 an indictment was presented in the District Court of Hill County charging appellant with the identical offense

charged in the present indictment. Upon motion of appellant a change of venue to Navarro County was ordered upon the first indictment. The present indictment was returned into the District Court of Hill County on March 10th, 1922. On the 25th day of March, 1922, the prosecution then pending in the District Court of Navarro County on the first indictment was dismissed on motion of the county attorney. It appears that the case in Navarro County had been called for trial at a prior term of that court, and that appellant had presented a motion seeking a quashal of the indictment for various reasons. The motion was not acted on at that time. After the present indictment was returned in Hill County the county attorney moved for the dismissal of the prosecution in Navarro County, setting out as reasons therefor the same grounds which appellant had urged in his motion to quash that indictment. When this case was called for trial appellant sought to have the present indictment quashed on the ground that when it was returned the prosecution for the same offense was still pending in Navarro County, and that by virtue of the change of venue to Navarro County the District Court of Hill County had lost jurisdiction; that the grand jury of the latter county had no right to return, nor the court to receive, the present indictment. It must be borne in mind that the exact point now before us is whether the second indictment should have been quashed and not whether the District Court of Hill County would have had jurisdiction to try under the second indictment, if the prosecution under the first had been still pending in Navarro County. The last question does not arise because the case in Navarro County had been dismissed before the present one was tried. We find only one Texas case, Cock v. State, 8 Texas Crim. App., 659, which appears to be directly in point. Cock and Spradley had been indicted jointly in Panola County for murder. On application of Spradley (Cock protesting) the venue had been changed to Shelby County. While the case was still pending in Shelby County a second indictment was returned against Cock in Panola County charging him alone with the murder. When his case was called for trial in Panola County Cock filed a motion to quash the second indictment, and interposed a plea to the jurisdiction of the court because of the change of venue which had theretofore been ordered. This court, speaking through Judge Winkler, held that the trial court properly overruled both the motion to quash and the plea to the jurisdiction. The opinion seems to recognize that a change of venue at the request of one of the parties carried with it the whole case, including all the parties jointly indicted; but that the first indictment, though still pending and undetermined in the county to which the venue was changed, did not prevent the prosecution to trial and conviction upon the second indictment. We express some doubt as to the correctness of the latter holding as it appears to be contrary to the great weight

of authority; but we think the case correctly decided that a change of venue upon the first indictment would not be ground for quashing the second one returned. It seems to be well settled in this State that the pendency of one indictment does not prevent the grand jury from returning subsequent indictments charging the same offense. Williams v. State, 20 Texas Crim. App., 357. Johnson v. State, 118 Ga., 310, recognizes the power in the court of original jurisdiction to return a subsequent indictment for the same offense, but denies the right in such court to try accused while the same charge against him on a prior indictment is pending in another county by virtue of an order changing the venue. To the same effect is Keefe v. Carbon County Dist. Ct. 16 Wyo., 381; Patterson v. State, 73 Mo., 695; Goddard v. State, 162 Mo., 198; 62 S. W., 697; State v. Billings, 140 Mo., 193, 41 S. W. Rep., 788. The Missouri cases refer to a statute of that state which provides, in substance, that a subsequent indictment supersedes a prior one charging the same offense. We think the right to return the subsequent indictment exists independent of any statute. In Smith v. Comm., 95 Ky., 322, 25 S. W., 106, accused had been indicted in Bell County and the venue changed to Clark County. A subsequent indictment for the same offense was returned in Bell County, and accused was forced to trial thereon while the other case was still pending in Clark County. The Court of Appeals of Kentucky held that the prosecution in Bell County did not lie, and that the subsequent indictment should have been quashed. This is the only authority to which we have been cited, or which we have discovered, that sustains appellant in his contention that the present indictment should have been quashed. We think the opinion in that case is in line with the authorities in holding that the court in Bell County could not try accused on the subsequent indictment while the prosecution under the first was still pending in Clark County, but regard it as out of harmony with Cock v. State, (supra) and the great weight of authority upon the point that the subsequent indictment in Bell County should have been suppressed. We, therefore, sustain the ruling of the trial court in refusing to quash the present indictment.

When this case was called for trial appellant filed a motion asking that he be granted a change of venue, asserting that there existed in Hill County so great a prejudice against him that he could not obtain a fair and impartial trial therein. The State controverted the truth of the matters set up in the motion, and evidence was heard. The refusal to order a change of venue, to our minds, presents a most serious question.

The bill of exception incorporating the testimony introduced upon this issue consists of nearly six hundred pages of type written matter, and in addition thereto many newspapers carrying accounts of the various happenings hereafter referred to are made a part of the

bill. It has been a laborious undertaking to carefully examine this mass of evidence, but this we have done, and the general conditions revealed therefrom may be condensed as follows:

In the latter part of 1920 or early in 1921,—being some three or four months after the bribe is alleged to have been given and accepted, and the bonds of road districts named in the indictment had been sold to Bibb and Hughes and the contract for road work awarded to them,—there apparently arose some dissatisfaction relative to the manner of handling the road funds and the letting of road contracts in Hill County. About this time the district judge and the grand jury demanded of the Commissioners Court an audit of the county books showing the handling of the county finances and road funds; this demand was refused by the county commissioners and thereafter, at the January term 1921 of the District Court, the grand jury began making an investigation of these matters. No indictments were returned at this term of court. The grand jury impaneled at the March term, 1921, again took up the investigation of these matters and devoted practically the entire seven weeks of that term to those subjects. About the 22d of March, 1921, three indictments were returned against appellant, charging him in one case with the conversion of an army tent belonging to Hill County; in another with the conversion of certain groceries, etc. of the value of $47.10 belonging to Hill County; in the third with the conversion of some army blankets belonging to the County. The return of these indictments was given publicity in the papers of the county. The grand jury continued its investigation and about the 25th of March one of the Commissioners, W. T. Green, was called before the grand jury and, under promise of immunity, was interrogated with reference to the source from which he obtained the sum of four thousand dollars which it had been discovered was received by him some time in September or October of 1920. Green refused to answer and was committed to jail by the district judge for contempt. A writ of habeas corpus was granted by this court and made returnable before the district court of Ellis County for trial upon certain issues of fact. Upon the hearing Green was ordered released on account of having been confined in jail without a commitment. Immediately after his release he was again called before the grand jury; he again refused to answer and was once more committed to jail by the district judge of Hill County. This time a writ of habeas corpus was sued out before the district judge of McLennan County and upon this hearing Green was remanded to the custody of the sheriff of Hill County. After remaining in jail approximately a day and a half Green made a confession to the county attorney. The court proceedings relative to Green in the various matters above related were given publicity in the papers throughout the county and became a matter of general discussion. The day that Green made his

confession was on Sunday. One of the Hillsboro papers, for the first time in its history, issued an extra edition announcing in large headlines that commissioner Green had confessed. This confession was not printed in full, but the significant statement was made in the papers that he had entirely exonerated the county judge and commissioners Stanford and Ward, leaving the clear inference that he had failed to exonerate appellant. The subject of Green's confession was carried as a news item in more or less detail by all of the county papers in their next issue. It became currently reported throughout the county that Green in his confession had implicated appellant. Thereafter indictments were returned against Green, Bibb and appellant, charging Bibb with having given bribes to Green and appellant and charging Green and appellant with having accepted bribes from Bibb in connection with the awarding of the contracts for the construction of the roads and the sale of bonds of the various road districts named in the indictment. The fact that these indictments had been returned was given further publicity in the various papers in the county, and also became a matter of general discussion. About this time some twenty or thirty influential citizens from various parts of the county filed in the district court quo warranto proceedings to remove the commissioners from office. These impeachment proceedings were also given publicity in the papers and by rumors generally circulated throughout the county. On April 23d, 1921, the grand jury returned five indictments against appellant charging him with the diversion of road funds of four of the named districts and with the conversion of county property, in that he had delivered $904,000 worth of bonds of road districts numbers 3, 6, 7, 10 and 12 to W. S. Bibb. Similar indictments were returned against commissioners Ward, Stanford and Green and against the County Judge. The return of these indictments became a matter of general discussion throughout the county and was also given publicity through the papers. The grand jury for the May term 1921 returned new indictments to cure some formal defects in the former ones. At this term of court the case of the State of Texas vs. W. S. Bibb charging him with having given a bribe to commissioner Green was called for trial. Bibb made application for a change of venue and upon the hearing of that issue the evidence of a number of witnesses from various sections of the county was heard. The trial of Bibb consumed about three weeks, during which time many people from various parts of the county were in the court room listening to the proceedings. The trial resulted in the conviction of Bibb. Before his motion for a new trial was determined the county attorney, with the consent of the district judge, made an agreement with Bibb by which he was granted a new trial and immunity from further prosecution in consideration of his turning "state's evidence." It was then currently reported througout the

county that Bibb in his statement confessed to having bribed appellant as well as Green. After this agreement with Bibb was made the grand jury returned indictments against the county engineer charging him with perjury, and with giving bribes in connection with letting of road contracts, and against commissioner Stanford, charging him with having accepted bribes in connection therewith and also with perjury in his testimony before the grand jury with reference to road matters. In May, 1921, a civil suit was filed by Hill County against the firm of Bibb and Hughes and the American Surety Company to recover the sum of $904,000. On account of the alleged conversion by them of the bonds on the various road districts. All of these various proceedings occasioned a great deal of public comment and discussion. It is also in evidence that during the time commissioner Green was refusing to testify before the grand jury that public indignation ran sufficiently high that some one posted a notice on the bulletin board in the court-house threatening Green with violence unless he testified, and the attorneys representing Green (who were the same attorneys representing appellant in the present case) were severely criticised because they were acting as counsel.

Appellant introduced fifty witnesses from every section of the county. They appear to have been representative citizens; many of them were engaged in such business as brought them in contact generally with the people of their communities, the business of some calling them to various other towns and neighborhoods in the county. The State in rebuttal introduced thirty-three witnesses. All of the witnesses, both for the State and appellant, are in agreement that the disclosures relative to the road matters were more generally discussed, and caused more excitement and public indignation than any other occurrence that had ever taken place in the county. The witnesses for appellant were all familiar with the various incidents of the investigations by the several grand juries, and stated that the people generally throughout the county believed appellant to be guilty, had so expressed themselves, and had prejudged his case. The thirty-three witnesses for the State believed appellant could secure a jury which would give him a fair trial, but examination of their evidence reveals that twenty-eight of them were familiar with all the details and incidents heretofore recited; that eleven of them believed appellant to be guilty, and that nine of them based their opinion that he could get a fair trial solely upon the belief in the fairness and integrity of the citizens of the county. It is manifestly impracticable to set out in detail the evidence of the various witnesses; but it is clear therefrom that no personal animosity was engendered against appellant, but a general indignation had been aroused against all officers and parties then connected with the road -building projects, and especially towards members of the Commis-

sioners Court, and a general and settled opinion had been reached that all the members thereof were guilty; that they had violated the trust reposed in them. The evidence shows that the discussion relative to these matters was more general, and the opinion as to the guilt of appellant and others more freely and publicly expressed about a year prior to the trial of this case; that after the venue had been changed to Navarro County there had been no such general discussion of it as before that time, but that the talk had again become more general after the reindictment in Hill County. The evidence, to our minds, does not show any change of opinion as to appellant's guilt reflected by a cessation of public discussion regarding his case. Most of the witnesses, when interrogated upon that point, very frankly stated that nothing had occurred within the year to change their own opinion or that of their neighbors in that regard. It rather indicates, we think, that the public generally had settled in its own mind the question of appellant's guilt, and then ceased to discuss it as a matter already concluded. Incorporated in the bill under consideration is the evidence of the jurors touching their qualifications. From it there is revealed the danger confronting appellant in an effort to secure an impartial jury. One hundred and nine were examined. Eleven were disqualified for various reasons, such as non-residence in the county or as not being householders or freeholders; of the remaining ninety-eight, ninety of them had information in greater or less degree of the general history of the investigations relative to road matters in the county; forty-two disqualified when first examined by the State on the ground that they entertained such an opinion as would influence them; fourteen at first qualified, but on cross-examination admitted that they had such an opinion as would influence their verdict; nine, when first examined, said they had opinions but would not be influenced thereby, but on cross-examination admitted the opinion was a fixed one which it would take evidence to remove. We may assume that these opinions were adverse to appellant, because no witness who was permitted to state his own opinion expressed one favorable to accused.

This opinion has already extended beyond the limits of propriety, and we do not undertake to review, or quote from, the many authorities in our own reports upon the subject under investigation. It has frequently been before the court for consideration. Statements of general principles and views of this court will be found in the following cases which have controlled us. Randle v. State, 34 Texas Crim. Rep., 43; 28 S. W. Rep., 953; Myers v. State, 39 Texas Crim. Rep., 500, 46 S. W. Rep., 817; Coffman v. State, 62 Texas Crim. Rep., 88, 136 S. W. Rep., 779; Faulkner v. State, 43 Texas Crim. Rep., 311, 65 S. W. Rep., 1093; Gallaher v. State, 40 Texas Crim. Rep., 296, 50 S. W. Rep., 388; Sorrell v. State, 74 Texas Crim. Rep., 505; 169

S. W. Rep., 299; Cortez v. State, 44 Texas Crim. Rep., 169, 69 S. W. Rep., 536.

As very frankly conceded in the State's brief, authorities are of little value in determining whether in a particular case a change of venue was properly or improperly denied. Each case in this respect must stand upon the peculiar facts revealed in developing the issue. We can very well appreciate the wide-spread interest aroused, and the indignation expressed, when the continued investigations of the various grand juries revealed a condition which had never before confronted the splendid citizens of Hill County. They became convinced that men who had been placed in positions of trust by them had betrayed that trust, and it became naturally a general subject for discussion and the expression of adverse public sentiment became general towards those thought to have been connected with it. The whole atmosphere became surcharged with the sentiment which had prejudged appellant's case, and doubtless many of those who expressed the honest opinion that a fair and impartial trial could be obtained in the county were unconsciously moved by the conviction that a fair and impartial trial could only result in finding appellant guilty. That such a condition might arise was probably foreseen when the framers of our law provided for a change of venue under certain conditions. We have been driven to conclude that those conditions existed in the present instance, and that the judgment must be reversed because of the error in refusing to change the venue.

Many other questions are presented, but a discussion of them is pretermitted as they may not be presented on another trial, or at least not in their present form.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*