## BISMARK POPE V. THE STATE.

No. 16267. Delivered March 28, 1934.

The opinion states the case.

*H. R. Sutherland,* of Corpus Christi, *J. Franklin Spears,* of San Antonio, and *Mann, Neel & Mann,* of Laredo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is embezzlement of city funds; the punishment, confinement in the penitentiary for three years.

Appellant, who was city attorney of the city of Laredo, was indicted under article 95, P. C., it being alleged, in substance, that the money charged to have been embezzled came into appellant's custody and possession by virtue of his office. Under the charter of the city of Laredo it is provided that the city attorney shall represent the city in all litigation in cases to which the city may be a party. An ordinance had been enacted allowing the city attorney as fees ten per cent. of the amount of delinquent taxes collected without suit and twenty per cent. of all such taxes collected after suit had been filed. Under the authority of the charter and the provisions of the ordinance to which reference has been made the duty had been imposed upon appellant to collect certain delinquent taxes due the city by El Nuevo Mundo, Inc. This corporation had filed a petition in bankruptcy. Hence it became necessary for appellant to present the claim of the city to the referee in bankruptcy. After the claim had been duly approved, the trustee executed a check payable to appellant, in the sum of $621.50, to cover the taxes. Appellant deposited this check to his individual account and thereafter, from time to time, made withdrawals, which eventually resulted in the entire amount coming into his personal possession. At no time did he account to the city of Laredo for the amount he had collected.

Appellant testified that after the check had been delivered to him by the trustee some question had arisen as to the au-

thority of the referee to classify the claim as preferred, and that he (appellant) was awaiting a decision of the matter before paying the money to the city. He testified, further, that he still had the money in his possession and had at no time converted it to his own use.

Appellant contends that there is a variance between the allegation and proof as to the receipt of the money by virtue of his office. He insists that the city attorney of Laredo has no authority to receive money for the city by virtue of his office. We think the city charter and ordinance to which reference has been made impose upon the city attorney the duty of receiving for the city money collected in those matters in which he is called upon to institute proceedings for the collection of delinquent taxes. The present case is clearly distinguishable from Ruby v. State, 7 S. W. (2d) 956. In that case there was no proof that it was Ruby's duty as city manager to receive and handle any part of the property or funds of the city.

It appears to be appellant's further contention that under the holding of this court in Scisson v. State, 51 S. W. (2d) 703, he is entitled to a reversal on the ground that the proof on the part of the State was that he had received in the first instance a check for the amount of the delinquent taxes; whereas the indictment alleged that he had embezzled money belonging to the city of Laredo. In Scisson's Case it was charged that a check belonging to the Raymondville Independent School District had been embezzled. The proof showed that Scisson cashed the check and appropriated the money. In reaching the conclusion that there was a variance, we expressly stated in the opinion on motion for rehearing that we were not holding that the money obtained in cashing the check was not held by Scisson in his official capacity as collector of the district. We quoted from Richards et al v. Hatfield, 59 N. W., 777, in which it was held that, notwithstanding a tax collector had no authority to receive in payment in discharge of the taxes anything but lawful money of the United States, the money obtained by cashing the check was held by the collector in his official capacity for the county. We are constrained to overrule appellant's contention.

It is observed that the statute under which the prosecution proceeded provides, in substance, that if any officer of any county, city or town * * * shall *fraudulently* take, misapply, or convert to his own use, etc. Appellant timely and properly excepted to the charge of the court for its failure to affirmatively submit to the jury his theory that there was no fraudulent in-

tent. We think this exception should have been responded to.

Appellant filed an application for a change of venue, wherein prejudice and a dangerous combination instigated by influential citizens were claimed to preclude the probability of a fair and impartial trial being accorded him. Upon the issue being joined, many witnesses were brought forward by each side. It was uncontroverted that the case against appellant had been generally discussed. Some of appellant's witnesses testified that it had been "under constant discussion for more than a year," and that after the indictments had been returned you could hear it discussed everywhere you went. The indictment herein was returned April 15, 1933. More than a year prior to the return of the indictment, the official conduct of appellant had been attacked at political gatherings attended by from three to five thousand people. On various occasions circulars attacking appellant's official conduct were printed and distributed generally over the city. The case was more widely discussed, according to the opinion of appellant's witnesses, than any other case that had been tried in Webb County. The Progressive Citizens Party, which had brought forward a ticket to oppose the City Administration, held many political gatherings. Further, they brought forward a ticket in county affairs. Both in the city and in the county campaign, appellant's official conduct was attacked before large audiences. A prior indictment charging appellant with embezzlement had been filed. After the return of the indictment last mentioned the city council determined to file proceedings for the removal of appellant from office. The matter was given wide newspaper publicity in the Laredo Times, and a weekly paper. For more than a year prior to the return of the indictments the discussion had continued, and after the return of said indictments the cases against appellant were generally discussed. Appellant's witnesses testified to hearing many people refer to the charges. They stated that in practically every instance the opinion was expressed by those referring to the charges that appellant was guilty. Appellant's witnesses based their opinion that it was impossible for appellant to receive a fair and impartial trial in Webb County on the wide discussion they had had heard of the case, the fact that appellant's official conduct had become a factor in political campaigns in which he had been attacked by speakers before large audiences, the expression generally by the people that he was guilty, the issuance of circulars attacking his official conduct, and the wide newspaper publicity given to the decision of the city council

to institute proceedings for removing him from office. The witnesses for the State gave testimony negativing the idea that they knew the sentiment of the citizenship. The opinion that a fair and impartial trial could be secured was predicated largely upon the witness' confidence in the general fairness and impartiality of the citizenship of the county.

In the state of the record, the opinion is expressed that no conflicting theories as to prejudice arose from the testimony. We are constrained to hold that it was shown that appellant and his case had been prejudiced to the extent that it was improbable that he could obtain that character of fair and impartial trial contemplated by the Constitution. See Stovall v. State, 260 S. W., 177. It is the general rule that, if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory, it being his duty to weigh the evidence. Bond v. State, 50 S. W. (2d) 813, and authorities cited. However, when the evidence is such that it leads to the conclusion that bias, prejudice, or prejudgment of the appellant, or his case, is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application. Bond v. State, supra, and authorities cited.

The judgment is reversed and the cause remanded.

*Reversed and Remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.