# MARCH 31, 1937

HUEY FULTON V. THE STATE.

No. 18907.   Delivered March 31, 1937.

The opinion states the case.

*H. B. Green,* of Athens, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

The opinion affirming the judgment of conviction in the companion case of Elmer Pruitt was delivered by this court January 27, 1937 (opinion No. 18,745).   (Reported on page 113 of this volume).

According to appellant's confession, he, Artie Cook and Elmer Pruitt entered into a conspiracy to kill and rob W. T. German and his wife, and burn their house.   Again, it was shown in said confessions that appellant and his companions entered the home of deceased and his wife at night; that Elmer Pruitt killed said parties with a .22 rifle; that thereafter appellant and his companions took possession of the money of deceased; that, upon leaving, they set fire to the house.

Testifying in his own behalf, appellant repudiated his confessions.   Further, he testified that he was at his home on the occasion of the homicide.   He declared that he had made the written statements to the officers because they had punished him.   However, the testimony of the officers was to the effect that appellant had been subjected to no mistreatment.   Appellant's wife testified that appellant was at home with her at the time the house of deceased was burned.   According to her

version, appellant could not have been present and participated with the alleged conspirators in the commission of the offense.

Appellant filed an application for a change of venue, and the court heard evidence thereon. The indictment was returned against appellant on the 29th of June, 1936, it being alleged that the murder had been committed in 1934. Elmer Pruitt was tried, convicted and given the death penalty in June, 1936. The trial in the present case was in September, 1936. After appellant was arrested the daily and weekly newspapers published in Athens, the county seat of Henderson County, gave great publicity to the crime. The daily paper had a circulation of about 2,200 and the weekly paper a circulation of about 1,000. The editor of said papers testified that the weekly paper went into practically every community in the county. From time to time editorials and news items concerning the offense were published in said papers. Also, the testimony adduced upon the trial of Pruitt was published. It was shown in the testimony adduced on the trial of Pruitt that appellant was directly connected with the murder. After the trial of Pruitt, and prior to appellant's trial, the sheriff and county attorney of Henderson County made political campaigns, during which time they made public speeches in practically every voting box in the county. In all their speeches they discussed the evidence against Pruitt and appellant, and referred to the fact that it was due to their efforts that appellant and Pruitt had been apprehended, and confessions of guilt secured from them. The trial of Pruitt was largely attended and "every available space in the courtroom, both lower and upper floor and gallery was crowded to capacity." The editor of the newspaper to which reference has been made testified: "From my investigation and what I have heard of the case from talking to people concerning this case I would say public sentiment is against the defendant." However, he would not say that appellant could not secure a fair and impartial trial in Henderson County. For about two weeks before the election the county attorney in his campaign devoted "a great part of his speeches to the cases against appellant and Pruitt." One of the witnesses testified: "Well, he talked about getting the confessions out of the negroes and getting statements from them with which he could use them to get convictions. * * * I think he said they should have the electric chair." Another witness testified that the county attorney discussed the evidence in the cases against appellant and his alleged coconspirators "in every one of the speeches" that the witness heard. This witness said: "Yes, sir, I know

that a good deal of time was devoted by the sheriff and county attorney candidates to discussion of these cases. That was about all they discussed." This witness testified, further: "Yes, sir, from those speeches that were made in regard to these cases and the wide publicity given to those cases it was bound to create some sentiment against these negroes. Oh, yes, I think it created a prejudice against these negroes. Yes, I believe all that wide discussion caused a prejudice to arise against these negroes. It would have been bound to—I suppose there would have been a prejudice against them anyway." However, said witness testified that he believed there were plenty of men in the county who would give the appellant a fair and impartial trial.

Witnesses for the State testified that in their opinion appellant could secure a fair trial in the county.

Under the circumstances reflected by the record, we are constrained to hold that the trial judge should have granted a change of venue. See Pope v. State, 70 S. W. (2d) 193; Richardson v. State, 70 S. W. (2d) 1003; Bond v. State, 50 S. W. (2d) 815, and authorities cited.

Appellant excepted to the charge of the court on the ground that it failed to advise the jury that he could not be convicted alone upon his confession. While not predicating a reversal upon the failure to charge the jury as requested, we are inclined to think the exception should have been responded to. The sufficiency of corroboration was for the jury.

For the failure of the trial court to grant appellant's application for a change of venue, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.